### SPICER VS. THE CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

DAMAGES:   *Personal injury through negligence — past and future suffering.*

1. For injury to his person caused by defendant's negligence, plaintiff is entitled to recover not only his actual pecuniary loss (including the value of the time lost, expenses of medical attendance, etc.), but also for bodily suffering arising from such injury previous to the trial, and for such future suffering, lameness or other inconvenience, as, from the evidence, appears reasonably certain to result therefrom.

2. On a rainy day, when the track was slippery, defendant's engineer, in charge of a freight train, uncoupled two cars loaded with stone, while standing on a side-track, upon a downward grade; and in consequence of such uncoupling, and of neglect to block the wheels in season, or to turn the switch connecting the side and main tracks, the two cars ran upon the main track and collided with an approaching passenger train; and plaintiff's injuries were caused (without fault on his part) by his jumping from such passenger train to avoid the effects of such collision. *Held,* that it was not a case which would warrant *punitory* damages.

3. Plaintiff's ankle was severely sprained; he was confined and. unable to attend to business for about two weeks; and could get about only upon crutches for two or three weeks longer. At the time of the trial some seven months after the accident, his lameness was hardly observable by persons seeing him constantly on the train in· the dis-charge of his duties as mail agent; and his attending surgeon thought he would entirely recover from the effect of the sprain. His salary was $1,080 per annum; he was deprived of this during the two weeks of his confinement; and his expenses for medical attendance were $25. *Held*, that a verdict for $2,500 must be set aside as excessive.

APPEAL from the Circuit Court for *Dane* County.· ·

Action for personal injuries caused by the negligence of the defendants and their servants.

The case, and the evidence and instructions touching the question of damages, are fully stated in the opinion of 'the court. Verdict for the plaintiff of $2,500 damages. A motion for a new trial on the ground that the verdict was contrary to law and the evidence, and the damages excessive, was over-ruled, and judgment entered against the defendants; from which they appeal.

*Stevens, Flower & Morris*, for appellants:

The damages are entirely disproportionate to the injuries, received. The plaintiff's cash expenses, for loss of time and surgeon's bill, amount only to sixty dollars; and the balance, $2,440, is given him for past and future suffering from a. sprained ankle, which has seriously inconvenienced him for only about four weeks, and is not likely to prove permanent. This court has, in two such cases, set aside the verdict of the jury, and indicated the maximum at which a judgment will be affirmed. *Potter, Adm'r, v. Chicago & N. W. R'y Co.*, 22 Wis.; 615; *Goodno v. City of Oshkosh*, 28 id., 300.

*Orton, Keges & Chynoweth* for respondents: 1. The accident occurred by the grossest carelessness of the. employees of the; defendant. The plaintiff was guilty of no negligence in jump-; ing from the car. The injury was very great, and can.never. be· fully repaired so as to make the ankle as good as before, but it

will be weaker and more likely to be attacked by rheumatism. The damages are reasonable. *Curtiss v. R. R. Co.*, 20 Barb., 282; *Hegeman v. R. R. Co.*, 16 id., 353; *Zemp v. R. R. Co.* 9 Rich., 84; Pierce on Am. R. R. Law, 494; Sedgwick on Measure of Damages, 714, 715, and cases cited; *Farish v. Reigle*, 11 Gratt., 697; *Worster v Propr's Canal Bridge*, 16 Pick., 547; *Clapp v. R. R. Co.*, 19 Barb., 464; . *Collins v. R. R. Co.*, 12 id., 492; *Penn. R. R. Co. v. Allen*, 53 Pa. St., 276; 7 Conn., 293. 2. Excessive damages are not sufficient cause for setting aside a verdict, unless they are so excessive as to bear marks of passion, prejudice or corruption on the part of the jury. 4 Wis., 67; 23 id., 195.

COLE, J. The only question in this case is, whether the verdict is so excessive as to warrant this court in interfering and granting a new trial on that ground. The principal facts out of which the action arose are, in brief, these: The plaintiff was mail agent in the employ of the government, and was injured in jumping from the passenger train of the defendant, which was coming north from Footeville to Magnolia, under full speed, on the 5th of September, 1870. At the time the plaintiff jumped from the mail car on which he was riding, the passenger train was about colliding with two flat cars loaded with stone, which had become disconnected from a freight train which had been moved on the side track at the station north. The day was rainy, the track was slippery, and these two cars, after being disconnected from the freight train, moved from the side track on to the main track—the road there being on a downward grade south—and, unattended, commenced moving with speed and great momentum towards the passenger train. The danger of collision was sudden and imminent, and the plaintiff, with others on the passenger train, jumped from the train a moment before it occurred. In jumping, the plaintiff sustained an injury to his left foot and ankle. He describes, in his testimony, the extent and nature of the injury, and the

way it occurred, in substance as follows. He says : " I jumped eight or ten feet ; had to jump over lower side of door; which was about as high as my knees. I fell on my hands. Didn't hurt anything about me except my foot and ankle. I was strained badly, and flesh was black to my knee. I didn't step on foot again for four weeks. I went back to my work in about ten days. Did my work on crutches for about two weeks. I suffer some pain now at times. I employed Dr. Ward as my surgeon. I jumped from the train because I thought it was the only chance to save my life. I employed a man while I was laid up to run in my place; paid him what I was getting—three dollars and some cents a day; my salary is one thousand and eighty dollars a year. Was put to no other expense except my physician's bill. My age is forty-one years. I reside at Madison, in this state, and have a family."

Dr. Ward, called to attend upon the plaintiff, in his testimony describes the nature and extent of the injury as follows : "His foot and ankle were badly swollen. The flesh around the ankle joint was black and blue. It was a very bad sprain. The plaintiff was lame for some time. There was nothing to be done for it except to bind it up and apply cold water. I don't think the ankle bone was injured. I was there seven or eight times. I think he used crutches for a couple of weeks. I should rather have a leg broken than to have a bad laceration of the ligaments of the ankle. There are cases where parties never entirely recover. It is more likely to be subject to rheumatic affection than a new ankle. His ankle must have been turned. My bill against the plaintiff is $25." On his cross-examination the witness further testified: "The ligaments were lacerated on the inside, which would indicate that the foot was turned out. I would rather have a simple fracture than a bad sprain. I regard the sprain a bad one which takes a long time to heal. It is sometimes three months before the foot can be used. Can usually get around in a week or ten days by using crutches. In an ordinary case the inflammation usually

subsides in about two weeks. The condition of the blood will sometimes retard recovery. I saw Mr. Spicer yesterday evening; my impression is that ultimately he will entirely recover from the effect of this sprain."

There was some other testimony, which tended to show that the plaintiff resumed his place as mail agent in about two weeks from the time he was injured; that he was compelled to go on crutches for a time, that he sometimes walked a little lame at the time of the trial in April, 1871; but that the lameness was hardly observable even to persons who had the best of opportunities to discover it.

Upon this evidence as to the nature and extent of the injury, the jury gave a verdict of $2,500 damages. And, as before stated, the sole question before us is, whether the damages allowed are so disproportionate to the injury proven to have been sustained by the plaintiff, as to warrant the court in interfering and granting a new trial for that reason? We are of the opinion that this question must be answered in the affirmative.

The evidence undoubtedly establishes a case of negligence against the company, while it likewise shows that the plaintiff was not guilty of any want of care or prudence in jumping from the train in the manner he did. The engineer of the freight or stone train had only been acting as regular engineer for about two weeks, and he was probably somewhat incompetent for his position, otherwise he would not have uncoupled the two flat cars on a slippery down grade without taking the precaution of securing them in their place on the side track. Besides, after the cars started, and the men found out that they could not stop them by throwing blocks of wood and plank under the wheels, no one seems to have thought in time of the necessity of turning the switch at the south end of the side track, so as to prevent them from passing on to the main track. And while these facts show that the company was negligent in not employing a more experienced engineer, yet there is nothing in the evidence which would warrant a jury in giving ex-

emplary or punitory damages, or smart money as it is sometimes called, by way of punishment. The plaintiff was entitled to recover all the damages resulting from the injury, including not only actual damages, such as loss of time and pecuniary expenses for medical attendance, but also for bodily pain and suffering arising from such injury previous to the time of trial, and for such future suffering, inconvenience or lameness as the evidence rendered it reasonably certain must necessarily result from it. This is the rule of damages which the circuit court gave the jury in order to guide them in the assessment of damages. Now, bearing in mind this rule, let us inquire what there is in the case at bar to show that the plaintiff was entitled to recover $2,500 damages. It appears, it is true, that he received a bad sprain of the ankle; that the ligaments were lacerated, but he returned to his work in two weeks from the time he was injured. For some time he was obliged to go on crutches. But, at the time of trial, seven months after he was hurt, his lameness was hardly observable by persons seeing him constantly on the train in the discharge of his duties as mail agent, and the attending surgeon thought he would "entirely recover from the effect of this sprain." The plaintiff was earning less than $1,100 a year, and yet the jury gave him more than two year's salary, in addition to his pecuniary expenses for loss of time and physician's bills. It seems to us that $1,000 would have been a most liberal and ample compensation for all the damages which, in the most favorable view of the evidence, any one can justly say the plaintiff sustained from the injury.

It is a delicate matter, we are aware, to interfere in actions for negligence, and grant a new trial on the ground that the damages awarded by the jury are excessive. But this court has exercised this power quite recently in a case not dissimilar in its facts and circumstances to the one before us, where the damages awarded by the jury seemed entirely disproportionate to the injuries sustained. *Goodno v. The City of Oshkosh*, 28 Wis., 300. And while this power should be cautiously ex-

ercised, still it is the plain duty of the court to grant a new trial where the damages awarded are so excessive as to indicate some improper influence or bias on the part of the jury, whether prejudice against the defendant, or some perversion of judgment in respect to their duty, that must result in injustice unless this is done. In this case, the jury might not have been conscious of any improper motive operating on their minds, but it is evident they rendered a verdict greatly in excess of the damages proved to have been sustained by the plaintiff.

*By the Court.*—The judgment of the circuit court is reversed and a new trial awarded.