FLORIDA RAILWAY AND NAVIGATION COMPANY, APPELLANT, VS. GEORGE W. WEBSTER, APPELLEE.

1. The court will not reverse a judgment if the case was tried on its merits, on the ground that there was no issue to be tried, because of a failure to join issue by *similiter* to a plea of not guilty.

2. It is not error to refuse to exclude a deposition, because the interrogatories are vague and indefinite as to the person to be examined, where it appears from the answers of the witness that he fully knew to whom the interrogatories referred.

3. A charge of the court to the jury cannot be said to assume facts not

in evidence, when it is so framed as to cast upon the jury the determination of the question to which the facts relate, and there is some evidence on the question to be considered.

4. It is proper to refuse instructions as misleading, when they are based on the theory of a party as to the facts in evidence, and ignore the legal effect of other facts, applicable to the relation and rights of the parties.

5. It is the duty of the railroad company to have a good, substantial and safe road track for the use of its trains, and default in that duty, in consequence of which a passenger is injured, is negligence for which the company will be responsible in damages. In a case in which it is shown that after an accident on the road causing injury, it was found that a rail only ten feet long was out of place, and the track was very bad, the rails much worn, and were of all lengths, while usually they are thirty feet long, the verdict of the jury finding negligence should not be disturbed.

6. A person traveling on a train which has with it a stock car carrying horses for him, his duty under his contract being "to feed, water and take care of the horses," is not guilty of contributory negligence from the fact that he was on said car when he was injured, if he was on the car while stopped at a station in the performance of this duty, and had not finished when the train started off, after a stoppage of fifteen or twenty minutes instead of forty-five, the usual time, and if it is not shown that he had opportunity before the accident to go to any other car.

7. Where the case is one for only compensatory damages, the rule which restrains courts from setting aside verdicts for excessive damages is not so rigid as in cases calling for punitive or exemplary damages. It is held on the facts of the case that the defendant was entitled to compensatory damages only, and that the verdict gave excessive damages.

8. The rule of some appellate courts in suggesting a remittitur, instead of total reversal in cases like this, is adopted as a good one.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion of the court.

*John. A. Henderson* for Appellant.

This is an appeal from a judgment of the Circuit Court for Duval county, Florida, rendered on the 6th day of March, A. D. 1885.

*March* 25, 1884.—Webster filed his præcipe in Duval Circuit Court against the Florida Central & Western Railroad Company. Summons *ad res* issued and was served the same day on B. S. Henning, the President of Florida Railway & Navigation Company.

*April* 7.—Webster filed his declaration in said action against the Florida Central & Western Railroad Company, wherein he alleges it, a corporation organized and existing under the laws of Florida, and a carrier of passengers upon railway from Chattahoochee to Jacksonville, and that it undertook for reward to it paid to carry plaintiff from Chattahoochee to Jacksonville safely, but did not do so. That while he was being carried on one of the trains of defendant, the car in which he was being carried, by reason of the bad condition of the railway track, which condition was due solely to the negligence of defendant, was thrown from the track, whereby the plaintiff was wounded; had his ribs broken, his shoulder dislocated, and was permanently injured, and suffered great pain, and incurred expense in medical and surgical attendance, and was prevented from transacting his business for a long time, and is permanently disabled from pursuing his vocation of carpenter and mechanic—claimed $20,000 damages.

On the same day that declaration was filed, the Florida Railway and Navigation Company entered its appearance, *and on May* 4, 1884, plead " *not guilty.*"

*March* 3, 1885.—And *without other pleading*, a jury was empanelled, a trial had and a verdict rendered in favor of Webster, assessing his damages at $9,000 and costs. A motion for a new trial was made and overruled, and appellant appealed.

JANUARY TERM, 1889. 397

Florida Ry. & Navigation Co. vs. Webster—Argument of Counsel.

The errors assigned are : that the court erred in overruling appellant's motion for a new trial upon the grounds :—

1st: *a.* That the damages awarded by the jury in their verdict are excessive and not warranted by the evidence adduced on the trial.

*b.* That the verdict is contrary to law, and to the evidence introduced on the trial of the cause.

*c.* That the court erred in charging the jury as follows: "If you believe from the evidence that the plaintiff was in the car in which he received injuries in the discharge of his duties to his horses, and that he had no other opportunity to attend to that duty before that time, and that he had not any safe opportunity to attend to that duty before that time, and that he had not had any safe opportunity to get out of the car previous to the accident after performing that duty, the fact of his so being in the car cannot be considered as contributory negligence on his part."

*d.* That the court erred in refusing to give the charge numbered " 3," asked by the appellant, which was as follows: " If the plaintiff saw fit to ride in the stock or freight car when a safe passenger car was provided for him, and was thereby injured, he took upon himself the perils of such car, and cannot recover."

*e.* That the court erred in refusing to give the charge numbered " 4," asked for by appellant, as follows: " If the jury believe from the evidence that the plaintiff was injured while riding in a car with some horses on the road of defendant, and they believe from the evidence that he entered said car without the knowledge of the conductor, then and there in charge of the train to which said car was attached, and if they further believe from the evidence that the defendant had provided a comfortable passenger car for the use of plaintiff, which was then and there at-

tached to said train, and if they further believe from the evidence that plaintiff would not have sustained the injuries complained of if he had occupied the car as provided, then they must find a verdict for the defendant."

*f.* That the court erred in not sustaining appellant's objection to interrogatories numbered 2, 3, 4, 5 and 6, propounded by plaintiff to H. J. Hammond.

2. That there was no issue joined.

The second error assigned is, "that there was no issue joined." The appellant, the Florida Railway and Navigation Company, appeared and plead " not guilty," and without further pleading a jury was empanelled and a trial had.

"If the jury are empanelled to try the issue joined, when in reality there is no issue joined, the judgment must be reversed and the verdict set aside." Wilkinson vs. Bennett, 3 Munf. Rep., 314; Oliver vs. Judge, 2 Stewart's Rep., 483; Hopkins and Moody vs. Arthur Burney, 2 Fla., 48; Stevens vs. Thornton's Admr's, 1 Wash. R., 156; Miller and Croom vs. F. Hock, 1 Fla., 195.

1st Error: *a.* The damages awarded by the jury are excessive. Appellee testifies that after the accident, " I was carried back to Tallahassee and placed in a hotel; a physician was called and I received every care, kindness and attention, and all bills were paid by defendant." That he was not very strong before the accident; would not say his general health was " very good " or " very bad ;" he was 51 years old; had worked some as carpenter, but now engaged in raising fruits and vegetables; has a homestead in Florida, some property in Iowa and some bonds. While the evidence shows that his right arm is permanently injured, he admits he has some use of it, and that his health has not been impaired. He can certainly attend to his business, or at least superintend it, and do some manual labor. It is not shown what amount of money he could have earned at

manual labor before the accident, nor what amount his earnings have been depreciated by his injuries. There is no testimony that would justify a verdict for $9,000—nothing upon which such a verdict could be based. It is entirely arbitrary and not sustained by evidence.

Besides the contract by which plaintiff secured reduced rates of transportation for his car, and the free pass for himself from starting point, if sufficient to show any agreement with the defendant, which is denied, was upon an express limitation of liability for damages not to exceed five dollars per one hundred pounds, and was valid.

*b.* The verdict is contrary to law and to the evidence introduced on the trial of the cause.

The testimony shows that the railroad company provided a safe and comfortable passenger car in which the appellee was riding from Chattahoochee to Tallahassee; that the train stopped at Tallahassee fifteen or twenty minutes, giving appellee ample time to feed his two horses, and get back into the passenger coach, if he so desired. But without the knowledge or permission of the conductor in charge of the train, appellee of his own accord left the passenger car at Tallahassee and went to ride in the stock car with his horses. The accident must have occurred within a few minutes after train started, as it had proceeded only five miles. Appellee says he was at the time standing in the door of the stock car. He was injured by his *own horses*. The passenger car he had just left was not thrown from the track and no one in it was at all injured. Had appellee remained there he would have received no injury. His excuse is that he got into the stock car to feed his horses and the train started before he got through feeding. It is not pretended that the train failed to stop at Tallahassee sufficiently long for him to feed two horses, nor that he had no safe opportunity before that time to feed them, nor

that he asked for or was refused a safe opportunity to feed his two horses and then return to the passenger car.

" One who by his negligence has brought an injury upon himself cannot recover damages for it. When the defendant has been guilty of negligence also, in the same connection, the result depends upon the facts. The question in such case is : (1.) Whether the damage was occasioned entirely by the negligence or improper conduct of the defendant, or (2,) whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary care and caution ; that but for such negligence or want of care and caution on his part, the misfortune would not have happened. In the former case the plaintiff is entitled to recover, in the latter he is not." R. R. Co. vs. Jones, 95 U. S., 442 ; Hickey vs. Bos. & Lou. R. R., 14 Allen, 429 ; Todd vs. Old Colony R. R. Co., 3 Allen, 18 ; 7 Id., 207 ; Gavel vs. M. & L. R. R. Co., 16 Gray, 501 ; Lucas vs. N. B. & T. R. R. Co., 6 Gray, 64; Ward vs. R. R. Co., 2 Abr. N. Y, Prac., V. 5, 411 ; Gal. and Chi. R. R. Co. vs. Norwood, 15 Ill., 468. (On tender instead of in caboose.) Doggett vs. Ill. Cen. Co., 34 Iowa, 284.

*d. and e.* The court should have instructed the jury as asked by appellant's counsel. R. R. Co. vs. Jones, 95 U. S., 443 ; Gavel vs. M. & L. R. R., 16 Gray, 501; Merchant's Bank vs. State Bank, 10 Wall., 604 ; Pleasant vs. Taunt, 22 Id., 121; Schuvant vs. Allen, 1 Wall., 359.

The law requires common carriers of passengers to take and carry every one who desires to go, provided they have room, and are not obnoxious according to certain standards. Jencks vs. Coleman, 2 Sumner C. C., 221 ; Angell on Carriers, §524; Story on Bailments, 591, (1) do (a.) ; 15 Ill., 472.

But at the same time they have the right to prescribe reasonable rules and regulations for the convenience, safety

and comfort of themselves and passengers. 15 Ill., 472; Jencks vs. Coleman, *supra ;* Angell on Carriers, §530.

"A passenger riding in a baggage-car, when there is room in the passenger coaches, is negligent, and if an accident happens in which, as the result shows, he would not have been injured had he remained in the passenger car, he cannot recover, although his negligence may not have contributed to cause the injury." Kentucky, etc., R. R. vs. Thomas, Am. & Eng. R. R., Vol. 1, p. 79.

"When a passenger enters a railway train he should take a seat in a passenger coach if there is room, if he voluntarily goes elsewhere and is injured the contributory negligence which will defeat his action for damages will depend upon the nature of the misfortune which resulted in his injury." Lawrenceburg R. R. Co. vs. Montgomery, 7 Ind., 474; Kentucky, etc., vs. Thomas, Am. & Eng. R. R. Cases, 79.

When the kind of accident which occasioned the disaster is as likely to occur to one car in the train as to another, and therefore the passenger is in no more danger therefrom in the baggage car than in the passenger coach, as from defects of tracks; *Held,* that there was no such contributory negligence as would prevent recovery, (O'Donald vs. Alleghany, etc., R. R. Co., 59 Pa.,) unless some agency in such car that would not "have existed in the passenger car should contribute to the injury." Kentucky, &c., vs. Thomas, 1 A. & E. Cases, 79.

In the case at bar appellee testifies that he was injured by his own horses as follows: "After leaving Tallahassee I was standing in the door of my car when suddenly the car raised about three feet and the next I knew I was wedged between my horses, with my head out. A car was on top of mine which was · mashed tolerably flat. The

26

horses, as they were relieved, began to struggle and mashed me. One struck me with his foot on my head, inflicting severe injury and tearing away the flesh. The horses had to be killed to get me out."

From this it appears that the injury sustained by appellee was inflicted by his horses, that but for the horses he would not have been injured, even in the stock car, and that no such agency existed in the passenger car where he should have been.

Passenger on a drover's pass is passenger for hire, but in such cases company may limit its liability for carrying such passenger, except as to gross or willful negligence. Boswell vs. Hudson River R. R. Co., 5 Bosworth N. Y., 699 ; Boswell vs. N. Y. Central R. R. Co., 25 N. Y., 442 ; Poucher vs. N. Y. Cent. R. R. Co., 49 N. Y., 263.

It is the duty of a court in its relations to the jury, to protect parties from unjust verdicts, arising from the rules of law and evidence, from impulse of passion or prejudice, or from any other violation of his lawful rights in the conduct of a trial. This is done by making plain to them the issues they are to try, by admitting only such evidence as is proper in the issues and rejecting all else. 22 Wall., 121.

It is error in the court to state only a portion of the material facts connected with a particular transaction, and omit other material ones which might put a very different phase upon it, and tell the jury that if they believe such facts are proved and true, then the right is with the party. This may, and frequently does lead the jury to regard the facts so stated as the only important facts in that connection. 15 Ill., 472.

The charge of the court excepted to (1st error C) is manifestly unfair to appellants and erroneous. It is not pretended by appellee, nor does it anywhere appear from the

testimony, " that appellee had no opportunity to feed his horses until the train started from Tallahassee, and that he had not had a safe opportunity to feed them before the train started or previous to that time." The charge misled the jury by stating facts not proven, and charging them, that if they believed from the testimony that such facts existed, they must find for plaintiff.

The charge in effect assumes that it was the duty of the appellant, without request made by appellee, to grant him a safe opportunity to feed his horses and get back into the passenger car, and that if the train did not happen to stop sufficiently long, whenever appellee desired to feed his horses, he had the lawful right without asking that it be stopped, and without asking permission to transfer himself from a safe passenger car to a stock car, and that he would not be guilty of contributory negligence when injured by his horses in the stock car in an accident that did no damage to or in the passenger car he had left, such we submit is not the law.

Besides appellee swears that the train stopped fifteen minutes at Tallahassee. The conductor in his testimony says it stopped there fifteen or twenty minutes. Fifteen minutes certainly afforded appellee ample time to go into the stock car and feed two horses and return to the passenger car. He does not pretend that he had not sufficient time then and there to discharge this duty, and return to the passenger car, nor does it anywhere appear that he was denied a safe opportunity then or previously to feed his horses and get back into the passenger car. Appellee does not say how long he remained in the passenger coach after it stopped at Tallahassee before he went into the stock car, but merely says that " at Tallahassee he went out and got into the stock car to feed his horses and the train started before he got through." The charge complained of cer-

404    SUPREME COURT.

Florida Ry. & Navigation Co. vs. Webster—Argument of Counsel.

tainly impressed the jury with the belief that it was the duty of appellant to afford appellee a safe opportunity to feed his horses, and that the burden was on appellant to show affirmatively that such opportunity was afforded. The charge given by the court was not applicable to the facts proved in the case, and was calculated to mislead the jury and did mislead them.

Again, plaintiff cannot justify his action in going into and remaining in the stock car while the train was running, instead of remaing in the passenger coach by the pretext that he was there to attend to the feeding of his stock. It was a mere pretense, for his whole testimony shows conclusively that he had claimed and exercised the right to ride and even to sleep in the stock car on the whole journey. And an afterthought, strengthened and magnified in its influence upon the jury, by the charge complained of. By the requirements of the law and the terms of his contract for transportation plaintiff should have been in the passenger coach at the time of accident. For any injury to his stock occasioned by any neglect of defendant, as in neglecting or refusing to give time to safely feed same, his remedy was the law, and his measure of damages the injury occasioned to his stock.

*Randall, Walkers & Foster* for Appellee.

The errors assigned by appellant are not sufficient in law to warrant a reversal of the judgment.

The grounds of the motion for a new trial were (A) for excessive damages.

In ascertaining the amount of damages for a personal injury, the jury may consider the bodily pain and mental suffering which have accrued and are likely to occur in the future in consequence of the injury, as well as loss of time,

expense of medicine and other attendance, and the diminished ability to earn money, 1 Sutherland on Damages, 197; 2 Sedgwick, 7th Ed., 547; Atchison vs. King, 9 Kansas, 550; Welch vs. Ware, 32 Mich., 77; Curtis vs. R. R. Co., 20 Barb., 282; Penn. R.R. vs. Dale, 76 Pa. St., 47; Spicer vs. R. R. Co., 29 Wis., 530; Russ vs. Steamboat, 14 Iowa, 303; Filer vs. N. Y. C. R. R., 49 N. Y., 42; Metcalf vs. Baker, 57 N. Y., 562; Collins vs. Council B., 32 Iowa, 324; Curtis vs. R. & S. R. R. Co., 18 N. Y., 534; P. & O. Canal Co. vs. Graham, 63 Pa. St., 290; (3 Am. R., 549, 555); Weisenberg vs. Appleton, 26, Wis., 56; Tall. R. R. Co. vs. Macon, 8 Fla., 305; Ill. C. R. R. vs. Barron, 5 Wall. 90.

Where, as in this case, the injury was such as to produce great bodily suffering, and the effect is such that the plaintiff has been permanently disabled from pursuing his usual avocation, it is submitted that the verdict was not excessive. In cases of compensatory damages, the judgment of the jury is not the subject of review, unless it is clearly apparent that they were influenced by passion, prejudice, or improper motives. 48 Ill., 107; 26 Conn., 393; 2 Bibb., 591 21 Ill., 188; 12 Barb., 492; 9 Cush., 228; 13 Nev., 106 Aldrich vs. Palmer, 24 Cal., 513.

In McMurray & Brittain vs. Basnett, 18 Fla., 609, this court, pp. 621-625, very fully expressed itself on the subject, and cited authorities which fully sustained this verdict.

And see authorities in Waits A. & Def., vol. 2, 468.

The point (B) that the verdict is " contrary to the law and evidence on the trial," is too pointless to require attention. It is too general, and suggests no question to be considered.

The next ground of motion for a new trial (C) is that the court committed an error in charging the jury.

This charge was applicable to the facts in the case. Plaintiff had started from Iowa with the car in which were

his horses and other property, and had generally slept in the same car. The witness, Ott, had also slept in another freight car similarly freighted. His horses required care and attention. He was told he could ride where he pleased. At Tallahassee he went into his car to attend to his horses, and the train (stopping about half an hour shorter than the usual time of stopping and starting at that place) started before he had attended to the horses, and he was then obliged to remain in his freight car, and about four miles away the accident occurred. The portion of the charge excepted to is a short extract from it, and we can see no fault in it. It should be read in connection with the whole.

Plaintiff was attending to his necessary duty to his animals as a shipper under the circumstances, and by the contract of shipmment this was his express duty. (See contract.) Going into the stock car, therefore, was not negligence on the part of plaintiff, and his remaining there was not his voluntary act, as the train had started before his work was done, and without having waited its usual time at Tallahassee, an important fact for the jury. See Filer vs. N. Y. C. R. R. Co., 49 N. Y., 47 ; Twomley vs. R. R. Co., N. Y., 158.

The next two grounds of motion for a new trial, (D and E), that the court refused to give the instructions offered by defendant, are not tenable, because: (1), they are not pertinent to the facts of the case ; (2), because they assume that the stock car was not ordinarily as safe as any other, a fact not proved ; (3), because they assume, contrary to the proofs, that plaintiff had no right to go into the car at the time he did to care for his horses, without the knowledge of a conductor in charge of the train. (The fact appearing that a new conductor took charge when the train started.)

In O'Donnell vs. Alleghany R. R. Co., 59 Pa., 250, it is

said of railroad disasters resulting from the giving away of the track or the breaking of some portion of a car, that they are as likely to occur at one portion of a train as another, and consequently a passenger is in no more danger from such accidents in the express car than in a passenger car. In the same case it is held, that if the plaintiff rode in the baggage car, with the knowledge or consent of the conductor or the company without remonstrance, he was not guilty of negligence. And see Pa. R. R. Co. vs. Langdon, 92 Pa. St., 212; Am. R. 651; Dunn vs. Grand Trunk R. R. Co., 58 Me., 187; Edgerton vs. N. Y. & H. R. R. Co., 39 N. Y., 227; Carroll vs. R. R. Co., 1 Duer, 579; Ky. C. R. R. Co. vs. Thomas, 79 Ky., 160; (42 Am. R., 208.)

Here the contract required the plaintiff to go into the freight car to care for his property, and indeed he had slept there until he reached defendant's road, when he was informed he could ride in his own car or any other, and it appears he intended to ride in the passenger car, but was prevented by the starting of the train at the time of the accident.

Nor is there anything in the proofs showing that in case of the breaking of rails or bridges his own car was less safe than any other, and without such proof the court cannot presume it was less safe. The fact that this car was broken up does not prove that any other car was safer, nor, if the passenger car had been destroyed would that mishap have proved that a freight car was the safer place to ride.

It cannot be a correct proposition of law, that by going into the freight car he took upon himself the perils that overtook his car and therefore could not recover; nor that if the plaintiff had gone into another car that was not smashed he might have escaped, therefore by going into a car that was broken up and himself injured, he "took upon

himself all the perils, and could not recover." The proposed charges that were refused by the court we repeat were not correct propositions as applicable to the facts proved. The charge given to which the exception was taken, to wit, " that if under the circumstances the plaintiff rightfully went into his car to perform duties required of him by his contract in the care of his horses, and had no safe opportunity to leave that car previous to the accident, he was not guilty of negligence," not only covers the law of the case as proved, but is even more liberal towards the defendant than was required under the terms of the contract which the defendant assumed.

The ground of motion for a new trial marked (F) is the overruling of defendant's objections to certain interroga-tories propounded to witness, Dr. Hammond. The objections are mere narrow criticisms upon the form of the questions. The interrogatories commence as follows, after the title of the cause giving names of parties : " Interroga-tories to be propounded to H. J. Hammond, a witness for the plaintiff in the above case," &c. " Int. 2. Has he ever been under your treatment ?" The other interrogatories are in relation to him, and he having been injured and under treatment, &c. We submit that the questions to witness relate to he and him, the plaintiff, and to no other person. The only requirement is that the questions shall be sufficiently pointed to enable the witness to understand and intelligently answer them. That the witness knew who was enquired about is evident, because he expressly names the plaintiff in his answer to the ninth interrogatory, as the party he testifies of. The objection seems frivolous. But even if this testimony is rejected, the testimony of Dr. Leonard covers the entire ground, and there is no conflicting testimony. In view of the testimony of Dr. Leonard, that of Dr. Hammond is merely cumulative, so

that even if it is rejected, the plaintiff's case is equally strong in every respect.

The second and third assignments of error we understand are not insisted upon, as they are predicated of an apparent misnomer of the defendant, which was corrected by the court below, as appears by a certificate of the clerk on file.

The fourth error assigned may have been predicated upon the same misnomer, but if not, we see nothing in the record upon which the assignment of error is made. This defendant took charge of plaintiff's car loaded with his goods and himself as a passenger for hire. (R. R. Co. vs. Lockwood, 17 Wall., 357, 384.) He had a through freight bill, and defendant by taking his car and himself and his property, attaching it to the defendant's train on its road, without exacting a new contract, assumed all the terms of his original contract.

The fifth and last error assigned is that there was no issue to be tried. We do not know what this means, unless it be that plaintiff omitted to add a similiter to defendant's plea concluding to the country. We refer the Court to Huling vs. Fla. Sav. Bank., 19 Fla., 695.

Respondent begs leave to cite the following authorities, in addition to those referred to in brief already filed, and upon the same points:

" In Carroll vs. New York and New Haven Railroad Co., 1 Duer, 571, it was held that a passenger injured by two trains of cars, running in opposite directions, coming in collision, is entitled to recover, although at the time of the collision he was in an apartment of the baggage car, notwithstanding the fact that he knew the position to be much more dangerous in the event of a collision than a seat in the passenger car, and that too though the result may have demonstrated that he could not have been injured if he had

been in a passenger car. This case is very much in point, and so far as we have been able to discover, it has not been criticised or overruled, but is recognized as correct in the case of Eaton vs. Delaware, Lackawanna and Western R. R. Co., 57 N. Y., 396, and by Wood in his recent work on Railway Law, in sec. 304, *supra.* In Nolan vs. Brooklyn City and Newtown Railroad Co., 87 N. Y., 63, it is stated, in the opinion of the court, that it is settled that independent of the mandate of the statute it is not, even in the case of steam cars, negligence *per se* for a passenger to stand on the front platform of a moving car.

"In Goodrich vs. Pennsylvania and New York Canal & R. R. Co., 29 Hun., 50, we were called upon to determine, in some respects, a similar question to the one now under consideration. We then reached the conclusion that under the circumstances of that case the question of contributory negligence was one for the jury. In that case we regarded the evidence tending to establish contributory negligence even stronger than the evidence presented in this case. Whilst the conclusion in that case was reached with some hesitancy, we are still inclined to the opinion that it should be followed in this case, and that the question of contributory negligence was one properly submitted to the jury."

MAXWELL, J.: This is an action to recover damages for personal injuries to the plaintiff, appellee, while riding in one of the cars of the defendant, appellant. The points to be decided here are raised upon rulings of the court below during the progress of the trial. There was a verdict of $9,000 for the plaintiff, a motion for a new trial, which was denied, and thereupon comes this appeal.

The errors assigned are mainly included in the first—the refusal of the court to grant a new trial. Of the others, the second and third are abandoned; and of those remaining,

JANUARY TERM, 1889.     411

Florida Ry. & Navigation Co. vs. Webster—Opinion of Court.

one is "that there was no issue to be tried." By this is meant that the pleadings show only a declaration and a plea of not guilty, without a joinder of issue by *similiter*. This court has decided that the absence of such a joinder is not good ground for reversing a judgment after a full trial and verdict on the merits, saying in its opinion, "in the light of all the authorities we have been able to examine, our conclusion is that a *similiter* is not a substantive plead- ing, but is a mere expression of the acceptance of the issues tendered in referring the cause to a jury, and after final judgment, the *similiter* not having been insisted on by de- fendant, the omission is amendable even after error brought, and cannot be well assigned for error, the cause having been fully tried on its merits." Huling vs. Florida Savings Bank, &c., 19 Fla., 695.

Another error not included in the motion for a new trial is, "that plaintiff below failed to show any privity of con- tract between himself and defendant." Not stopping now to consider the evidence relating to this point, it will appear hereafter from our conclusion on the whole evidence that we think it is not well founded.

Before the trial below, objection was made to certain in- terrogatories to H. J. Hammond, a witness for plaintiff, on the ground that they were vague, indefinite and uncertain, and do not show concerning whom the enquiries were made, and on the trial the reading of his deposition was objected to because those interrogatories should not have been allowed. One of the grounds of the motion for a new trial is that the court erred in not sustaining the objections to the interrogatories. The objections rest upon the fact that the interrogatories do not in themselves disclose to whom they relate. One is this: "Int. 2. Has he ever been under your treatment? How often, when and for what?" The others are like this in not giving the name of the person

about whom the enquiries are made.   The only interroga-
tory preceding the one quoted, asks the profession of the
witness, and the length of time he had been practicing.
But preceding that was the caption showing the style of
the court and of the case ("George W. Webster vs. The
Florida Railway and Navigation Company"), immediately
followed by this statement: "Interrogatories to be pro-
pounded to H. J. Hammond, a witness for the plaintiff in
the above case, who resides," &c.   This gave some indica-
tion, though imperfect, of the person to whom the interrog-
atories referred; and upon reading the deposition we find
that the witness was fully advised as to the person about
whom he was testifying, going so far in answering an in-
terrogatory not objected to as to mention him by name,
and to speak of the railroad on which he received his inju-
ries.   We think where it clearly appears from the answers
of a witness that he knows the meaning of the interrogato-
ries he is answering, that his deposition should not be ex-
cluded because the interrogatories are defective from being
vague and indefinite.

In its charge to the jury the court said: " If you believe
from the evidence that the plaintiff was in the car (stock
car) in which he received his injuries in the discharge of
his duties to his horses, and that he had no other opportu-
nity to attend to that duty before that time, and that he had
not had any safe opportunity to attend to that duty, before
that time, and that he had not had any safe opportunity to
get out of the car previous to the accident after performing
that duty, the fact of his being in the car cannot be consid-
ered as contributory negligence on his part."

This is assigned for error, but we think without good
ground, espscially when we find immediately following in
the charge this alternative: " If, on the other hand, you
believe from the evidence that it was not necessary for the

plaintiff to be in the car, and he went there not in the discharge of any duty, and you believe he should have been in the passenger coach, and not in the car he was in, you must find for the defendant."

That the charge of the court may be understood, we recite the facts, as shown by the evidence, up to the time when the plaintiff was injured on defendant's road.

The plaintiff was moving by rail from Iowa to Florida, taking along two horses, a wagon and other personal effects. When he started from Iowa he was furnished a stock car for transportation, under a contract with the Chicago, Milwaukee & St. Paul Railway Company, by which he was bound to load, unload, feed, water and take care of his stock (the horses) at his own expense and risk; and in consideration of the payment made for transportation of his stock and movables, he was entitled to pass free over the road with his stock. This contract was for transportation over the company's road to Chicago, but, in contemplation that the car would pass over other roads, it was " agreed that when stock shall pass over more than one road to reach its destination, the company upon whose road any accident, loss or damage may occur, shall alone be liable, and no suit shall be brought, or claim made, against any other company forming a part of the route for such loss or damage." In connection with the contract was a letter of the freight agent of the Chicago, Milwaukee & St. Paul Railway Company, as to rates to be paid by plaintiff for the car with its contents, from Banair (Iowa) to Jacksonville, Florida. At Chicago the plaintiff signed another paper which he did not read, not having time to read it, and he has not seen it since. He had a drover's pass to Indianapolis, and asked for another there, but was told he would be passed without it. The car was attached to freight trains from the start until it reached Pensacola Junction, Ala-

bama, and the plaintiff generally rode and slept in it up to that point. There it was attached to a passenger train, and when it reached Chattahoochee Junction (in Florida) it was shifted to a passenger train of defendant, and was with that train when the accident causing the injury to plaintiff occurred. At Pensacola Junction he was told by the conductor that he could ride on the passenger car or his own, as he pleased. At Chattahoochee Junction, where his car was attached to defendant's train, the conductor, who enquired if he was the man with the stock car, told him he could ride where he pleased. In both instances the permission to ride in the car of his choice was given in response to his enquiry, whether he could ride in the passenger car. When the train reached Tallahassee, about 6:40 a. m., he went from the passenger car to his own, to feed his horses, and the train, which had stopped fifteen or twenty minutes, instead of the usual time, forty-five minutes, started before he got through, so that he remained in his car till the "smash-up" happened, about five miles from Tallahassee. The conductor was changed at Tallahassee, but plaintiff did not know it, and did not see the new one till after the accident.

Looking now to the charge of the court, the objection that the portion of the charge relating to plaintiff's opportunity to feed his horses, and to get back to the passenger car, assumes facts not in evidence, is not justified either as to assumption or as to the evidence ; and it would seem that if it were objectionable, it worked more against plaintiff than defendant, for it in effect announced a burden on plaintiff to satisfy the jury that he had not before had the opportunities in question. The court had in view the matter of contributory negligence, this depending upon the right of plaintiff to be in the car, in which his injuries were inflicted, in discharge of duty to his horses, and upon his not

having neglected proper previous opportunity to discharge that duty or neglected to return to the passenger car when he had finished the feeding.   There was evidence as to all these questions: on the question of duty, the contract which bound him to feed his horses, and on the question of opportunity, the hour of arrival at Tallahassee, 6:40 a. m., in November the time of stoppage there, shorter than usual, the feeding not finished before the train started, and the short distance run before the accident.   Whether the evidence was enough to relieve plaintiff from contributory negligence, was not indicated by any assumption of the court, but was left to the jury.

Other errors assigned are upon two instructions asked by defendant, which the court refused.   The instructions are: 1st. " If the plaintiff saw fit to ride in a stock or freight car, when a safe passenger car was provided for him, and was thereby injured, he took upon himself the perils of such car, and cannot recover."   2d. " If the jury believe from the evidence that the plaintiff was injured while riding in a car, with some horses, on the road of defendant, and they believe from the evidence that he entered said car without the knowledge of the conductor then and there in charge of the train to which said car was attached, and if they further believe from the evidence, that the defendant had provided a comfortable passenger car for the use of plaintiff, which was then and there attached to said train, and if they further believe from the evidence that plaintiff would not have sustained the injuries complained of, if he had occupied the car as provided, then they must find a verdict for the defendant."

These instructions could not have been without a misleading tendency on the minds of the jury.   The main controversy was as to the right of the plaintiff on the car which was billed for his use from Iowa to Jacksonville,

Florida. Was there anything in the contract for the car, or in the circumstances of the case, which bound him to ride in the passenger car, whenever one was connected with the train to which his car was attached? Or, if there was, were the circumstances under which he came to be on his car at the time of the accident such as to excuse his absence from the passenger car, and exempt him from a charge of contributory negligence? These were vital questions in the case. But if the instructions asked had been given, there was nothing for the jury but to find for the defendant, if a passenger car was provided on which plaintiff could ride and the conductor was ignorant of his presence elsewhere—the instructions entirely ignoring any legal effect of facts growing out of his peculiar relation to the car provided for his exclusive use. We think the refusal to give the instruction was proper.

It is objected to the verdict of the jury that it is " contrary to the law and evidence introduced at the trial."

This brings up the question whether the disaster from which appellee's injuries came, was the result of negligence on the part of appellant. Primarily, it was the duty of appellant to have a good, substantial and safe road-track for the use of its trains, and default in that duty where the defect was patent to common observation would be negligence. The evidence in regard to this is not very full, but the jury deemed it sufficient to show negligence, and we are not prepared to hold otherwise. It was found after the accident that a rail only ten feet long was out of its place— that the track was very bad—that the rails were much worn, and were of all lengths, while usually rails are thirty feet long. Evidently from this, the track was not in a condition answering the rquirements of a good, substantial and safe road.

Then comes the question of contributory negligence. If

JANUARY TERM, 1889. 417

Florida Ry. & Navigation Co. vs. Webster—Opinion of Court.

appellee is to be considered as having been an ordinary passenger, with no responsibilities or duties except as such passenger, it is easy to see that he was out of place on any other than the car provided for passengers, and that he should be held to the consequences of contributory negligence. But was he an ordinary passenger ? Clearly not. He was traveling under a contract which gave him a car for the transportation of live stock and movables all the distance from Iowa to Jacksonville, Florida, under which it was made his business to " feed, water and take care of " said stock, and under which he was entitled to pass free " in actual charge of and accompany the stock." Though this was a contract not made directly with appellant company, yet appellee and his car were received by said company while on the line to their destination, and in the absence of anything to show a different agreement, must be presumed to have been received for transportation under said contract. More than this, when the car was attached to the train of appellant the conductor told appellee he could ride where he pleased. The change of conductors a short distance after the train got on its way makes no difference in the case. It is apparent, therefore, that the law applicable to ordinary passengers cannot be invoked to condemn appellee for not being in the passenger car when he was injured. See Lawson vs. The Chicago, St. P., M. & O. Railway Company, 64 Wis., 447. That was a case similar to this, differing principally in the fact that in that the party who was to accompany and care for the stock was by the contract especially authorized to ride in the stock car. In this, if the authority to ride in such car was not implied from the terms of the contract, interpreted by the fact that from the start and along the greater portion of the distance no passenger was connected with the trains

which carried his, it was given by an agent of the company who had charge and control of the ·train. The conductor was the person to administer the rules of the company and apply them according to the circumstances. O'Donnell vs. Alleghany Valley R. R. Co., 59 Penn. St., 239; Alabama Great Southern R. R. Co. vs. Yarbrough, 83 Ala., 238; Kentucky Central R. R. Co. vs. Thomas, 79 Ky., 160. Independent of this, was the right of appellee to go into his car to feed and water his horses, so that even if ordinarily he should not have been there as a passenger, when a passenger car was at hand, this right justified his presence there on occasions and at places suitable for the performance of his undertaking and duty in respect to the horses.

Suppose then, we admit the contention of appellant that the proper place for appellee when the train was running, was in the passenger car, is there anything in the facts to excuse and justify his presence in his own car at the time he received his injuries? The time was about the usual feeding hour, early in the morning. He had gone into his car to feed his horses at a place where the regular stoppage of the train was forty-five minutes; but after stopping only fifteen or twenty minutes the train started on its course, while he was still in the car, his work unfinished. The disaster occurred when the train had run about five miles. It is not shown that in this run any opportunity was furnished for transferring himself to the passenger car, and presumably in so short a run there was no such opportunity. Thus we find him in his own car under circumstances in which it was reasonable and proper he should be there, not in fault in being there when he entered, and caught remaining there when, though another car was at his service, he could not help himself. It is hard to conceive that in such a state of facts he was subject to blame for negligence, and we think he was not.

JANUARY TERM, 1889. 419

Florida Ry. & Navigation Co. vs. Webster—Opinion of Court.

We hence conclude that the verdict of the jury, so far as the liability of appellant in damages for injuries to appellee is concerned, should not be pronounced by us to be contrary to the law and evidence in the case.

There remains to be considered the complaint of appellant that the verdict of the jury gave excessive damages. If the case is not one for exemplary, vindictive or punitive damages, the complaint would seem to be well founded; and we do not think it is such a case. As we understand the rule, such damages are allowed only where there has been a wrongful intent to do injury, or where the injury is done wantonly or recklessly, or where, if not done intentionally, it is the result of reckless negligence. In the language of Sutherland on Damages (vol. 1, 724), " they are allowed when a wrongful act is done with a bad motive; or so recklessly as to imply a disregard of social obligations; or where there is negligence so gross as to amount to misconduct or recklessness." Ordinarily, where the injury has not been done with a bad motive, " the person injured shall receive a compensation commensurate with his loss or injury, and no more." Ibid, 17. And where the person is injured through negligence, and not purposely, the same rule of compensation should be observed, unless the negligence is of a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects. The rule is thus expressed in Milwaukee R. R. Co. vs. Arms et al., 91 U. S., 489: " to authorize the jury to visit the company with damages beyond the limit of compensation for the injury actually inflicted, * there must have been some wilful misconduct, or that entire want of care which would raise the presumption of a conscious indifference to consequences." In S. & W. Alabama R. R. Co. vs. McLendon, 63 Ala., 266, the court says: " for an injury resulting

from mere negligence, only compensation can be recovered. But when the negligence is so gross as to show willfulness, wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, then punitive or exemplary damages may be awarded." As expressed by others, see 1 Sedgwick's Measure of Damages, 53; N. O., Jackson &c., R. R. Co. vs. Statham, 42 Miss., 607; M. & C. R. R. Co. vs. Whitfield, 44 Miss., 466; Caldwell vs. N. J. Steamboat Co., 47 N. Y., 282; Kennedy vs. North Mo. R. R. Co., 36 Mo., 351.

From these and numerous other authorities of like purport, it seems to be settled doctrine that in cases of injury to persons from negligence, only compensatory damages will be allowed, if there is not positive fault of the nature of recklessness.

There is some looseness and confusion in the books in the use of the word " wilful " in connection with negligence, but in our view such connection involves a contradiction in terms, for if there is willfulness, that removes the case from the category of negligence, because then there is intentional wrong; and it is only when the negligence is marked by " that reckless indifference to the rights of others which is equivalent to an intentional violation of them," (91 U. S., *supra*,) or, in the language of Sedgwick, by " a grossly careless disregard of the safety and welfare of the public," that the law holds the party to the same responsibility as if the offence were intentional, and will add exemplary to compensatory damages.

In the case at bar the only evidence of negligence was that some of the cars of the train ran off the track, that the witness " found a rail out not more than ten feet long, and (he says) the track was very bad. The rails were much worn. There were rails of all lengths. Rails are usually thirty feet long." While this shows a state of things that

justifies a charge of negligence, it cannot be said, in the absence of anything more to explain what is meant by the track being " very bad," that it shows recklessness in those whose duty it was to keep the track in proper condition. To say that the " track was very bad " was but the expression of an opinion, and cannot be taken as a fact unless the facts on which the opinion is based are given, and are of a character to warrant the opinion. What might constjtute a " very " bad track in the eye of one person, might not in the eye of another. So far as the facts were given go, they are not sufficient of themselves alone to lead to so strong an opinion. Hence we do not think the case has the elements which call for exemplary damages.

Then, considering the verdict as one which should have given compensatory damages only, was it excessive ? If it was, the rule which ordinarily restrains courts from disturbing verdicts on the ground of excessive damages, has not the same application as in cases which authorize exemplary damages. In the latter, where courts will not interfere unless, as said in 3 Story, *supra*, " in a clear case where the jury have acted upon a gross mistake of facts, or have been governed by some improper influence or bias," or by passion or prejudice, the restraint comes from the fact that the law prescribes no measure of damages, but leaves it to the sound discretion of the jury. Yet, even in such cases, the courts do not always consider the restraint as absolutely binding on them. Wiggin vs. Coffin, 3 Story, 1 ; Chicago West. Div. Ry. Co. vs. Hughes, 87 Ill., 94 ; Spicer vs. Chicago & N. W. Ry. Co., 29 Wis., 580 ; Bass vs. Chicago & N. W. Ry. Co., 39 Wis., 636 ; McCarthy vs. Niskern, 22 Minn., 90 ; 42 Miss., *supra ;* 1 Sutherland on Damages, 810-11. But in cases not calling for exemplary damages, and where legal rules regulate the measure of damages, as where compensation for the injury

furnishes the guide, the courts have less reluctance in setting aside verdicts, when these award damages found to be excessive.

Returning to the question of excess in this case, and considering it in the view of compensatory damages, what does that include? "In an action for negligent injury to the person of the plaintiff, he may recover the expenses of his cure, the value of the time lost by him during the cure, and a fair compensation fbr the physical and mental suffering caused by the injury, as well as for any permanent reduction of his power to earn money." 44 Miss., *supra*, referring to Sherman & Redfield on Negligence, section 606. Pierce on Railroads, 301, says: " The damages for personal injuries include, and are limited to, the natural and immediate consequences of the wrongful act. They include irrespective of the defendant's motive or conduct at the time of the injury, 1, expenses of surgical and medical attendance and nursing, 2, bodily pain, taking into account loss of time, the extent and probable duration of the injury, its effect on the health, the mental and physical powers, the capacity for labor, the pursuit of an occupation and the earning of money." These extracts express substantially the doctrine of all the authorities on the subject; and we proceed to apply it to this case.

As to the injury to appellee, there was a severe wound on the head, tearing away the flesh; his shoulder blade and ribs were broken, and he suffered, he says, as much as human could endure. "Since the accident my health has been somewhat impaired, and I cannot raise my hand without pain, and if I put it up often it hurts very much." The physician who attended him says: " After making an examination of him I found that his head received a large contused wound on the temple; that the right shoulder blade had been driven downward; that the * end of the

collar bone was displaced; that the pectoral muscles were all contused and lacerated. These injuries were all on the right side. All the fixed ribs on the right side were injured, and some of them cracked. * * The parietal layer of pleura was also injured, which caused him great pain. All the muscles of the right shoulder were badly contused. * * The injury to the shoulder will be permanent, so that he will never be able to do any manual labor with his right arm. It cannot be cured by treatment. The other injuries were not of a permanent character." After a month's treatment appellee was able to travel, and left Tallahassee. Just before the commencement of this suit, three or four months later, another physician saw him, and after describing the injuries, says that appellee was " unable to raise his hand above his head or use his right arm for any practical purpose, and suffering much pain. Later examination revealed gradual union and healing of the broken bones, with a rigidity of the muscles. His health and strength have suffered very much from injuries received. Wholly disabled from manual labor (lasting effects) for a lifetime, (from) the deformities of the shoulder and ribs of the right side, and the rigidity of the muscles attached."

Now, as to appellee himself prior to the injury, he was fifty-one years old, and in his testimony says : " I was not strong before the accident. I would not say my general health was very good or very bad. * * Have worked at carpentering some. Was moving to Florida to raise oranges and start a nursery, having been engaged in raising small fruits in Iowa. Already had a place purchased and partly cleared. * * The year previous to the accident I cleared, with the aid of my son (14 years old) the sum of $600 during four months by raising and shipping

small fruit. These four months were the best part of the year."

On this evidence the principal items of compensation are for pain and suffering, physical and mental, and for loss by reason of injury to capacity for earning money—other evidence relieving the case of expense of medical treatment and nursing, and the cost of board while under treatment, the appellant having paid these. From the very nature of the matter, it is not practicable to fix any definite scale for measuring the money damage to be awarded for physical and mental suffering, but it should be confined to compensation within reasonable limits, and not partake of the character of punishment on the party inflicting the injury. Inasmuch as some injuries cause more pain and suffering than others, the jury must be allowed some latitude of discretion in adjusting the compensation for the pain and suffering, to the facts of each case. In the present case we have no means of knowing how much the jury gave on account of this item, but taking the verdict as a whole, and allowing a liberal amount for this, we think the evidence as to other items too scanty and indefinite to authorize so large a verdict. As to appellee's capacity to labor and earn money, no data are given except that the year before he came to Florida he, with the aid of his son, made $600 in four months from his fruit farm in Iowa. We infer from what he says, that those were the only money-making months of the year for that business. At any rate, he does not say that he made any more that year. No evidence is given relating to the money value of his labor in Florida, which was to be his future home; and we have but few specific facts in the case to constitute a guide to the compensation which would be proper, even on the ground that his injuries have totally and permanently disabled him from earning money, which, however, he does not

himself say is the case, and we are not satisfied from the evidence is the case. If we take his earnings in Iowa, as given above, as a guide, and make a calculation based on that, allowing nothing for the labor of his son, the verdict of $9,000 would result in giving him an amount, the interest of which, at eight per cent. only, would yield him annually more than his earnings did. And that would bring this further result, that as long as he lives he gets each year in interest what will compensate him for his loss from inability to labor, and at the end of his life will still have the $9,000. But make a liberal deduction for other items properly entering into compensation for injury, the pain and suffering, and reasonable expenses of suit to recover, there would still be left an amount, according to our view, which, tested in the same way, would be seen to be excessive.

In a Texas case, Houston & T. C. R. R. Co. vs. Willie, 53 Texas, 318, the court says: "If compensation for lessened ability to labor be assured as the true measure of actual damages, then it would seem that it should not be such sum as would bring an annual interest corresponding with the annual value of this lessened ability, leaving the principal sum still belonging to the estate of plaintiff after his death, although he had then become wholly incapacitated for labor; but would be an amount which would purchase an annuity equal to this interest, during the probable life of the plaintif, calculated upon a reliable basis of the average duration of human life." We think this furnishes a good rule by which to measure the damages in such a case. But if the disability to labor is not total, the damages should be graduated to suit the extent of the disability. Though if total, the state of health of the person before the injury, considered in connection with the age, is

not to be overlooked in determining the probabilities of life.

Our conclusion being that the verdict should be set aside as excessive, yet instead of absolute reversal on that account, we will give the plaintiff the option to retain his judgment if he will enter in the Circuit Court a *remittitur* of $3,500, as of the date of said judgment. This course is in accordance with the practice in some other appellate courts, and we think it a good one, to the end of saving vexatious, expensive and prolonged litigation. The objection made to such a course, that the court is substituting its judgment for that of the jury, when this should not be done except where it is plain they have been governed by prejudice or bias, or other improper influence, does not apply, for this is not indicating what amount the court would have given, but only such amount as it would not feel at liberty to pronounce excessive.

The order will be that the judgment stand as of the date it was rendered if the plaintiff enter the *remittitur* indicated, but that failing to do this within thirty days after the mandate of this court is received by the Clerk of the Circuit Court, the judgment is reversed and a new trial granted.