THE SAVANNAH AND WESTERN RAILROAD COMPANY *v.*
PHILLIPS, and *vice versa.*

1. Where a railroad company furnishes to a contractor engaged in constructing an extension of the company's railroad an engine and train, upon which a fireman already in the service of the company is, by it, ordered to work, the company is liable for personal injuries to him, caused while obeying this order, by defects in the engine attributable to the company's negligence, although the track of the extension in progress is in possession of the contractor, and the operation and movements of the train thereon are under the latter's exclusive control.

2. Requests to charge made by defendant's counsel, undertaking to set forth the issues involved in the pleadings and evidence, and asking instructions that the plaintiff cannot recover if certain designated matters of defence are proved, but which completely ignore and omit any reference to material parts of the plaintiff's declaration and evidence upon which he would be entitled to recover irrespective of the matters of defence referred to, should be refused.

3. If a railroad company employed another corporation to construct for it a railroad under a contract by the terms of which, if strictly carried out, the other corporation would be an independent contractor and consequently the railroad company would not be liable for injuries occasioned by defects in the construction of the road-bed, but if afterwards the parties abandoned this contract, and the railroad, by its own officers and servants, took charge of and supervised the work, gave directions as to how the road-bed should be constructed, and assumed general management and control of the enterprise, the railroad company could not relieve itself of liability for injuries occasioned by negligent or improper construction, but would be primarily responsible.

4. If a railroad company furnishes to a contractor, for use in constructing an extension of its road, one of its locomotives, together with the engineer and fireman employed thereon, and the latter, remaining in the service of the railroad company, is, without fault on his part, injured by the running of such locomotive, the presumption of law arises that the injury was occasioned by the neg-

ligence of the railroad company. The general rule on this subject is not changed because at the time of the injury neither the engineer nor the fireman was engaged in the usual and ordinary business of the company as a common carrier of freights and passengers.

5. In cases where the presumption of negligence arises against a railroad company under section 3033 of the code, it is generally a question for the jury, and not for the court, as to whether or not by the proof of certain specific facts this presumption is removed.

6. The principles of law governing this case are ruled in the preceding head-notes ; there was no error in any of the charges or refusals to charge complained of ; the verdict was warranted by the evidence, and the court properly refused to grant a new trial.

March 3, 1893.

Railroads. Independent contractors. Negligence. Charge of court. Before Judge MARTIN. Chattahoochee superior court. March term, 1892.

The material portions of the declaration were, in substance, that the plaintiff was an employee of The Savannah & Western Railroad Company, in the capacity of fireman; that the company was causing an extension of its line to be built, furnishing iron for the track and engines to haul the construction trains, and was running trains over the greater part of this extension; that he was ordered by his superior officers, agents of defendant, to work as fireman upon the engines running over the completed portions of the extension ; that he obeyed this order, and while engaged in the performance of his usual duties as fireman on one of the engines thus employed, and being still in the service of defendant, he was, without fault or negligence on his part, injured by a derailment of the engine, caused by the negligence of the defendant in failing to keep in safe repair and condition both the engine and the track over which it was then running.

Besides the general issue, the defence mainly relied upon was, that the railroad track in question was not, at the time of the injury, in the possession of the defendant, but of another corporation, the Chattahoochee Brick Company, which, as an independent contractor, was

building the extension for the defendant; that this contractor, and not the defendant, was operating the train upon which plaintiff was at work when injured, and had exclusive control of its movements, as well as of the employees thereon; and that, consequently, the contractor, and not the railroad company, was liable to the plaintiff for the injuries he received.

The evidence showed that the defendant furnished the train to the contractor, and directed the plaintiff to work as fireman on the engine attached to the same; that defendant paid plaintiff and the engineer, who was also working upon this engine under orders from the defendant, their wages, though under the contract between the railroad company and the contractor the amounts so paid were to be charged to the latter; that the conductor in charge of the train was an employee of the contractor, and directed and controlled the movements of the train; that the plaintiff was not guilty of any fault or negligence in bringing about the calamity by which he was injured; and that whatever may have been the original contract between the railroad company and the contractor, its terms were not adhered to, but the former took charge of and supervised the work of construction, gave directions concerning it, and assumed general management and control of the enterprise to such an extent that in law the relation of master and servant really existed between the railroad company and the contractor.

There was some slight evidence tending to show that the track at the place where the injury occurred was defectively and improperly constructed, but the decided preponderance of the evidence was that the track was well built and safe. As to the condition of the engine, the weight of the evidence was to the effect that it was old and in some parts, especially the brakes and appendages thereto, defective, though it had been but recently

repaired.  It was not shown, however, that the defects were of such character as would have made it the duty of the fireman to discover and guard against them.

PEABODY, BRANNON & HATCHER, for the railroad company.

McNEILL & LEVY, contra.

LUMPKIN, Justice.

1. The statement prefixed to this opinion was prepared by the writer, and is a brief but fair summary of the voluminous pleadings and evidence in this case.  In view of what is therein contained, we think the verdict necessarily found that the derailment of the engine was caused by its own defective condition, and the legal presumption, as will be hereinafter shown, being that this defective condition was due to the defendant's negligence, we see no reason why the plaintiff was not entitled to recover upon this branch of the case.  Independently of the question whether the relation of master and servant existed between the railroad company and the brick company, and granting that the latter was in the fullest sense an independent contractor for whose negligence the railroad company could not be held liable, and that as such contractor it had the exclusive possession and control of the track, and directed and controlled the operation and movements thereon of the train in question, still it was defendant's train, and the engineer and fireman were its servants.  At best, so far as the defendant is concerned, it had only hired or let its train and servants to the contractor, and was certainly under a legal duty to these servants to furnish them with a reasonably safe engine with which to work for the contractor.  They were obeying the orders of the railroad company in running this engine wherever they were directed to run it by the brick company; and their master, the railroad company, was as much bound to protect them on the track in question, to which

it had sent them, as upon any part of its regular lines of road, from dangers arising from defects in the engine which it was not incumbent on them to detect, and from which they were under no duty to the company to protect themselves. To hold otherwise would be sub-versive of the plainest principles of law and justice.

2. In one of the requests offered by the defendant, the court was asked to instruct the jury, in substance, that if, at the time the injury was received, the defend-ant was not in the possession of this road nor operating thereon the train upon which the plaintiff was employed at the time he was hurt, but both the track and the train were then in the possession and under the control of the Chattahoochee Brick Company, which company was operating the train in the construction of the road, the plaintiff could not recover in this case. Other re-quests, much to the same effect, asked that the jury be further instructed that if the train in question was fur-nished by the railroad company to the Chattahoochee Brick Company in accordance with the terms of the contract between them which had been introduced in evidence, and the brick company was using and oper-ating the train under that contract in the manner and for the purpose indicated, the plaintiff would not be entitled to recover. It has already been shown that under the pleadings and the evidence the plaintiff had a distinct right of recovery irrespective of the matters contained in these requests to charge. Therefore, to have given the instructions asked would have been to completely ignore those allegations in the plaintiff's declaration and the proof supporting the same, upon which he mainly relied as a basis for recovery, viz: that while engaged in the defendant's service, and without fault on his part, he was injured by reason of the de-fective condition of one of the company's engines, which it had negligently failed to keep in proper state of

v 90 53

repair.   This being true, the court very properly refused
to give the requests as presented.

3. Upon the merits of this case, as shown by the evi-
dence, we do not think the plaintiff would have been
entitled to recover upon his allegation that his injury
was occasioned by the defective and improper construc-
tion of the road-bed, even granting that the company
would have been liable to him for an injury resulting
therefrom.   There is little or no evidence to support
the conclusion that the track and road-bed were not in
a safe and proper condition, and there is scarcely any
reason to conjecture that the jury found they were not.
Inasmuch, however, as the defendant raised the point
that it should not be held liable for the alleged negli-
gence of an independent contractor in this respect, this
contention deserves notice at our hands.   A sufficient
answer to it is, that no matter what relation was estab-
lished between the railroad company and the contractor
by the terms of the contract originally made between
them, the evidence shows plainly and unequivocally
that in many material respects that contract was subse-
quently abandoned or departed from.   It appears that
the railroad company, through its civil engineers and
other officers and servants, really took charge of and
supervised the work of construction; that while the
work was in progress, and before the arrival of the time
for its final acceptance or rejection, numerous objections
were made as to the manner in which the work was
being done, and the contractor was required to do cer-
tain portions of it over again in accordance with specific
directions given by the company's engineers, who gave
personal attention to the details of construction.   Fur-
thermore, the railroad company furnished a portion
of the materials used, and selected therefrom such as
should be used in the construction of particular por-
tions of the road-bed; and in fact, *dum fervet opus*, as-

sumed general management and control of the enterprise. These facts take this case out of the general rule laid down in *Atlanta & Florida R. R. Co.* v. *Kimberly*, 87 *Ga.* 161, and bring it within the fifth exception therein stated, which may be found on page 168.

4. It is well settled law that the presumption of negligence imposed upon railroad companies by section 3033 of the code arises in favor of an employee whenever it is affirmatively shown that he has been injured " by the running of the locomotives or cars or other machinery" of the company, and that he himself was without fault. In the present case, it is certain that the plaintiff was not chargeable with the slightest degree of negligence, and did not in any way contribute to his injury. It was contended, however, that he could not invoke in his favor the rule laid down in the section cited, because at the time of the injury the engine upon which he was employed was being used and operated in the service of a contractor engaged in building an extension of the defendant's railroad, and not in the usual and ordinary business of the defendant as a common carrier of freights and passengers. No reason occurs to us why the general rule should not be followed simply because of the particular facts stated. In the first place, section 3033 does not declare that its provisions shall not be applicable in cases where the locomotive, car, or other machinery in question is not being employed in the transaction of the company's regular business as a carrier, but does declare in general terms that the presumption against railroad companies shall arise in *all* cases where injury ensues by reason of the running of the cars, etc. Besides, it was perfectly lawful and proper for this company to hire or furnish to a contractor it had employed to extend its road any of its rolling-stock or other machinery which might be needful or useful for this purpose; and if it undertook, as

the record shows was done in the present case, to send
along with a locomotive so furnished its own engineer
and fireman, still retaining them in its service, the duty
devolved upon it to see that its engine was kept in
proper and safe condition and repair. This conclusion,
we are confident, is in exact accord with the meaning of
the statute, and comes fully within both its spirit and
letter. In principle, though perhaps not in precise
terms, the ruling herein made is supported by *Georgia
Railroad* v. *Miller*, decided at the present term, wherein
cases are cited to sustain a similar conclusion as to the
application of the section in question. 90 *Ga.* 571. If
the defects in the engine had been such that the plain-
tiff, in the exercise of ordinary prudence, might have
discovered them, or if it had been his duty to do so, the
rule laid down in *Georgia R. R. &c. Co.* v. *Kenney,* 58
*Ga.* 485, might have been applicable to the case at bar,
but the record discloses nothing of this sort, nor was
any such contention made.

5. One of the grounds of the motion for a new trial
complains that the court refused to charge as follows:
"If you should believe from the evidence that the en-
gine in question was examined a short time before this
accident and was in a reasonable and good state of re-
pair and suitable for the use intended, then the presump-
tion of negligence arising by operation of law from the
run-off and accident to plaintiff would be removed."
This was, in effect, asking the court to determine for
the jury whether or not the particular facts stated were
sufficient to overcome the presumption of negligence
raised by law against the railroad company, and the
court properly refused to usurp this function of the jury.
It was for them, and not for the court, to decide what
sort of an examination, if any, was made, what condi-
tion the engine was in and how it appeared, and after
looking into all the facts and circumstances, to determine

whether or not the legal presumption had been removed. In *Central Railroad* v. *Hubbard*, 86 *Ga.* 623, it was held: "Whether or not the presumption of negligence which section 3033 of the code provides shall in all cases be against a railroad company has been removed, is a question of fact for the jury, and not one of law to be determined by the court." In that case counsel for the railroad company asked the court to charge, in effect, that when *all the facts* of the transaction appear in evidence, no presumption arises against the company at all; and in passing upon the refusal of the court to give this instruction, the words above quoted were used. In the same case, counsel also presented another request which grouped together certain alleged facts tending to show negligence on the part of plaintiff's husband, who was killed by the railroad company, and asked the court to charge affirmatively that such facts would constitute negligence. The opinion delivered in that case is referred to for a discussion of both the questions indicated. In the present case, the request under consideration groups together certain facts tending to show diligence, and asks the court, as a matter of law, to declare that such facts did show due diligence on the part of the railroad company. This instruction the court rightly refused. It may be that instances might arise where a certain state of facts, fully established and uncontradicted, would unequivocally be sufficient to remove the presumption of negligence raised by the law against a railroad company, and in such case it might not be erroneous or improper for the court to so instruct the jury; but this power should be exercised with extreme caution, and the court should never invade the province of the jury by deciding questions of fact which should properly be left to them for determination.

6. We have, in the preceding divisions of this opinion, ruled upon and discussed all the material questions of

law involved in the case. After a careful examination and consideration of the several grounds contained in the motion for a new trial, we find no error in any of the rulings or charges of the court complained of, or in the refusal of requests to charge tendered by counsel. The verdict in favor of the plaintiff was amply sustained by the evidence, and no complaint is made as to the amount of it. We are therefore satisfied that the trial judge wisely exercised his discretion in refusing a new trial.

*Judgment affirmed on main bill of exceptions. Cross-bill of exceptions dismissed.*