FLORIDA CENTRAL AND PENINSULAR RAILROAD COM-
PANY, A CORPORATION ORGANIZED UNDER THE
LAWS OF THE STATE OF FLORIDA, PLAINTIFF IN
ERROR, VS. JOHN W. MOONEY, DEFENDANT IN ER-
ROR.

1. In actions for negligence, any evidence tending to prove
knowledge on the part of the person alleged to have been negli-
gent of those circumstances and surroundings which enter into the
question as to whether such person has failed to exercise proper
care, is admissible.

2. To entitle an employe to recover damages from his em-
ployer for personal injuries caused by the negligence of another
employe, under the provisions of Chapter 4071, acts of 1891, the
plaintiff must himself have been free from fault, as the pro-
visions of section 2 of that act relating to the apportionment of
damages have no application to such cases.

3. In an action by an employe under the provisions of Chap-
ter 4071, acts of 1891, to recover damages from his employer for
injuries alleged to have been inflicted by the negligence of an-
other employe in performing some act in the defendant's service,
in the performance of which plaintiff as a co-employe was partici-
pating, the plaintiff must show either that he was free from fault
himself or that there was negligence on the part of his co-employe.
Upon proof that plaintiff was free from fault, the statutory pre-
sumption arises that the servants of the defendant were at fault,
and it thereupon devolves upon the defendant to "make it appear"
to the contrary.

4. If the act resulting in injury to plaintiff, an employe, was
one being performed by other employes in the defendant's busi-
ness, but in the performance of which plaintiff was not partici-
pating, then the presumption of negligence on the part of the

agents of the defendant, and that plaintiff was free from fault, arises under the statute (Chapter 4071, act of 1891) to the same extent as if plaintiff was not an employe, and it devolves upon the defendant to relieve itself either by showing that plaintiff was at fault, or that its servants were not negligent.

5. Where a statute is adopted from a sister State, any known and settled construction placed thereon by the courts of that State prior to its adoption, not inharmonious with the policy and spirit of the general legislation of the adopting State on the subject, will prevail in construing the statute in the latter State.

6. A servant in the performance of his duties is bound to exercise ordinary care for his own safety, or that degree of care which prudent persons usually exercise under similar circumstances, and if he is injured by failure to exercise such care, his master is not liable.

7. If, in the performance of his duties, the servant has no instructions to pursue a particular method, and two or more methods are open to him, he can not be said to have been negligent if he in good faith adopts that method which is more hazardous than another, if the one adopted be one which reasonable and prudent persons would adopt under like circumstances.

8. Shifting cars by means of the "kicking back" process is not necessarily at all times an act of negligence *per se*, even though there may be a safer method of shifting them.

9. In actions for negligence where there is no evidence tending to show negligence of so gross and flagrant a character as to evince a reckless disregard of human life, or of the safety of those exposed to its dangerous effects, or that entire want of care which would raise the presumption of a conscious indifference to consequences, or to show wantonness and recklessness, or reckless indifference to the rights of others equivalent to an intentional violation of them, exemplary damages can not be awarded.

Writ of Error in Circuit Court for Levy County.

*Statement.*

The defendant in error recovered judgment against plaintiff in error for $5,000 in the Circuit Court of Levy

county on November 28, 1894, from which this writ of error was taken. The declaration, filed February 22, 1894. claimed damages for personal injuries sustained by plaintiff March 1, 1893, upon defendant's railroad at Cedar Keys. It alleged that plaintiff was employed by defendant as train shifter at that point to take charge of incoming trains, and, in accordance with instructions from its depot agent, to place cars on the sidetrack; take others therefrom; rearrange cars in and make up outgoing trains; that in discharging such duties plaintiff performed the same kinds of labor ordinarily performed by conductors, brakesmen and flagmen on freight trains, and had as a co-laborer a shifting engineer who had charge of the engine, and whose duty it was to watch for plaintiff's signals and at once obey them; that while plaintiff on said day was with reasonable care faithfully discharging his duties in the most accustomed and practicable manner, his leg and fingers were crushed and mangled by defendant's train; that the injuries were caused by defendant's negligence in not providing necessary, suitable and practicable arrangements and conveniences for plaintiff to safely discharge his duties, and by the negligence of defendant's shifting engineer in failing to obey plaintiff's signal to stop the engine and cars in time to have prevented the injury.

The defendant's pleas, filed November 28, 1894, upon which issue was joined, alleged: 1st. That it was not guilty. 2nd. That plaintiff had for years been in defendant's employment as train shifter at Cedar Keys; was well acquainted with all dangers incident to shifting cars in and around defendant's track at that point, and with the condition and location of the switch, platform and tracks which were then in the same condition as they had been for years prior thereto; that on the date alleged defendant's train on its arrival at Cedar Keys

was turned over to plaintiff; that one N. F. Launt acted as hostler in charge of the engine; that plaintiff took charge of the train to shift same, and while it was backing plaintiff jumped off a car to a switch platform which was wet; that he fell under the car and it passed over him causing the injury; that the accident was due wholly and entirely to plaintiff's negligence, and not to any negligent act of the defendant or any of its servants or agents. 3rd. That plaintiff's injury was not due to the negligence of defendant's servant who had charge of the engine that was backing the train, but was entirely the result of an accident for which defendant was in nowise responsible.

It appears from the evidence that the injury occurred on March 1, 1893, shortly after seven o'clock, about three-quarters of an hour after the train arrived; that defendant's warehouse and depot at Cedar Keys was located on a wharf some distance from the shore; that about sixty feet from the shore, out on the trestle, a sidetrack ran into the main track and the switch for this sidetrack was operated on a platform about twelve or fifteen feet square, situated about ten feet from the ground underneath; that on this occasion the ground underneath was dry, though at high tide it was always covered with water. In shifting cars and making this switch certain signals were in use between the plaintiff and Launt, the shifting engineer, and previous to this time the signals had always been understood and obeyed by the engneer in shifting cars in the same position on the same tracks. On the evening in question plaintiff had to use a lantern to see what he was doing on account of the darkness. The train was composed of the engine, a box car, a flat car, an express car and passenger coaches, in the order named. Plaintiff was required to run the express car and coaches down on the

main track toward the shore past the switch, and the remainder of the train with the engine out on the side-track toward the shore, for a car to be brought back upon and backed down the main track and attached to the express car and coaches. The train backed out from the depot; plaintiff was on the platform of the express car next to the engine, and when the platform of the express car was about three car lengths from the switch, plaintiff pulled the pin, disconnecting the flat car and express car, and signaled the engineer with his lantern, to stop. The flat car and express car parted company, the engineer slowed up but did not stop. When the platform of the express car was opposite the platform of the switch, plaintiff stepped to the switch platform and fell; the express car and passenger coaches passed on, and the cars attached to the engine passed over plaintiff's limbs and dragged him along the switch platform until he fell on the ground underneath. This process of shifting cars, known as "kicking cars," was very dangerous; though according to plaintiff's testimony it was universally practiced on all railroads and he had no instructions not to shift cars in this manner. Plaintiff had all night in which to perform this work; had the entire control of the work, the engineer being subject to his orders. There was another and less dangerous, but less expeditious, method of shifting these cars in the manner desired, but it had never been practiced by plaintiff at this point. The following printed rules of the company, known to plaintiff prior to the injury, were in evidence: "Stepping upon the front of approaching engines, jumping on or off trains or engines moving at a high rate of speed, getting between cars while in motion to uncouple them, and all similar imprudences are dangerous and in violation of duty. * * * The company does not wish or expect its employes to incur

any risks whatever from which, by exercise of their own judgment and by personal care, they can protect themselves, but enjoins them to take time in all cases to do their duty in safety, whether they may at the time be acting under orders of their superiors or otherwise." There was evidence tending to show that plaintiff had been often warned by defendant's depot agent, though not in his official capacity or as a representative of the company, of the danger incident to making "running switches" or "kicking cars;" that the engineer on this occasion did not see any signal either to stop or slow down, but that in accordance with his previous custom in such cases, he did slow down when he got to what he thought was the proper distance from the switch, and kept backing the train slowly until it passed over the switch, when he ascertained for the first time that plaintiff was hurt; that it was understood between plaintiff and the engineer before the train left the depot that the engine was not to stop, but only to slow down at a certain point; that this understanding was carried out by the engineer; that signals to stop were always given from the switch platform, and the engineer was never on the lookout for a signal from the car platform. The plaintiff was asked "How long had Ned Launt been shifting engines at Cedar Keys before the injury?" Defendant objected to this question upon the ground that same was impertinent, did not tend to prove any of the issues in the cause, and tended only to show the competency or incompetency of the engineer. The objection was overruled and the witness answered, "About two or three weeks, but I don't know exactly."

At plaintiff's request the court instructed the jury that (1) if they believed from the evidence that at the time the plaintiff was alleged to have been hurt he had not been guilty of fault or negligence, and that he was

injured by the fault or negligence of the engineer, they should find for the plaintiff. (2) If they believed from the evidence that at the time the plaintiff was alleged to have been hurt he had not been guilty of negligence or fault, that unless the company made it appear that the engineer exercised all ordinary and reasonable care and diligence, the presumption in such case being against the company, they must find for the plaintiff.

At defendant's request the court instructed the jury that (1) a railroad employe always assumes the ordinary risks of his employment, and if you find from the evidence that the plaintiff was injured as a result of the ordinary risks run by men of like employment, you must find for the defendant. (2) The fact that employes of a railroad company were in the habit of switching in a peculiarly dangerous manner, when the switching might be done in another and less dangerous manner, does not excuse a man in following such dangerous custom, unless he does so by express orders of his superior officer. If, therefore, an employe assumes without special orders to follow such peculiarly dangerous custom, he assumes the risk; and if he is injured, he can not recover.

The court charged the jury of its own motion as follows: "The charges requested by counsel in this case and which have been given to you by the court, are so meagre that I do not consider them as covering the entire law of the case. I shall, therefore, supplement the charges which have been given to you by giving you another charge: the act of the Legislature which governs this case. I shall read to you Chapter 4071 of the Acts of 1891, as follows: 'Section 1. A railroad company shall be liable for any damage done to persons, stock or other property, by the running of the locomotives or cars, or other machinery of such company, or

for damage done by any person in the employment and service of such company, unless the company shall make it appear that their agents have exercised all ordinary and reasonable care and diligence, the presumption in all cases being against the company.

'Sec. 2. No person shall recover damages from a railroad company for injury to himself or his property where the same is done by his consent, or is caused by his own negligence. If the complainant and the agents of the company are both at fault, the former may recover, but the damages shall be diminished or increased by the jury in proportion to the amount of default attributable to him.

'Sec. 3. If any person is injured by a railroad company by the running of the locomotives or cars, or other machiney of such company, he being at the time of such injury an employe of the company, and the damage was caused by negligence of another employe, and without fault or negligence on the part of the person injured, his employment by the company shall be no bar to a recovery. No contract which restricts such liability shall be legal or binding.' "

The court further instructed the jury of its own motion: "As to the damages to be allowed in this case, in the event that you should find for the plaintiff, there are two kinds of damages to which I call your attention. Damages are either compensatory or punitive; compensatory damages are defined as such as arise from actual and indirect pecuniary loss, mental. suffering. value of time, actual expenses and bodily pain and suffering. Exemplary, vindictive or punitory damages are such as blend together the interests of society and of the aggrieved individual, and are not only a recompense to the suffering, but also a punishment to the offender and an example to the community. But punitive or exem-

plary damages can only be allowed in peculiar cases. Exemplary damages can be allowed in cases of negligence only where the negligence is of a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness, recklessness or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them."

The defendant requested the following instructions which were refused: "1. To entitle the plaintiff to recover, he must show that the injury was caused by the negligence of the engineer, and also without any fault on his own part. 2. Unless the plaintiff has shown both negligence on the part of the engineer, and that he was himself without fault, you can not give him a verdict. No amount of sympathy for him or his family can justify you in giving him damages. 3. If you find from the evidence that the plaintiff was injured while performing a dangerous work, and that he could have done the work in a less dangerous way, but that he voluntarily chose a more dangerous way, and was injured in consequence, that he is not entitled to recover, and you must find in favor of the defendant. 4. I charge you that if the evidence shows you that the defendant voluntarily undertook to do the work, in the performance of which he was injured, in a manner in which he had been warned against by an official of the company, and that he might have done the work in a less dangerous manner, then he was guilty of what the law calls contributory negligence, and he can not recover, even though the engineer was in fault."

The defendant excepted to the following rulings of the court, and has here assigned them as error: Overruling objections to the question propounded to plaintiff as a witness, "How long had Ned F. Launt been shifting engines at Cedar Keys before the injury;" giving the second instruction requested by the plaintiff; refusing the first, second, third and fourth instructions requested by defendant; giving its own instructions upon the subject of punitive or exemplary damages, and giving in its charge to the jury, sections one and two or Chapter 4071, act of 1891. Other facts of the case are stated in the opinion.

*Fletcher & Wurts*, for Plaintiff in Error.

No appearance for Defendant in Error.

CARTER, J.

1. The court did not err in overruling objections to the question propounded to plaintiff, "How long had Ned F. Launt been shifting engines at Cedar Keys before the injury." Launt was the engineer in charge of the engine at the time of the accident. It was his alleged negligence which caused plaintiff's injury. The length of his service as shifting engineer at this point was material as bearing upon his knowledge of the location and situation of the main tracks, sidetracks, switches, the methods of operating them and of shifting cars at this particular place, as well as the customary duties of the men employed thereat, and the system of signaling in use by them. The question had no tendency to elicit testimony as to the engineer's competency, as argued by plaintiff in error. It did not inquire how long Launt had been a shifting engineer, but how long he had been shifting engines at this particular

place.   It tended to elicit evidence showing a knowl-
edge upon the part of the engineer of his surroundings,
and the conditions existing at the time of the accident,
and it can never be irrelevant or impertinent to prove a
knowledge on the part of one alleged to have been neg-
ilgent of those surroundings and circumstances which
enter into and often control, the question as to whether
such person has failed to exercise proper care.

II.  There was no evidence tending to show any
negligence on the part of the defendant in failing to pro-
vide necessary, suitable, safe or practicable arrange-
ments and conveniences for the plaintiff as its train
shifter at Cedar Keys, but only that plaintiff's injuries
were caused by negligence of defendant's shifting en-
gineer.   What we decide in this case, therefore, has no
reference to a case where the master's own negligence,
and not that of his employe, causes injury to another
employe.   It is admitted in the declaration, and clearly
shown by the evidence, that plaintiff and Launt were
co-employes, engaged in the same common work, and
independent of statutory enactments the defendant,
their employer, would not be liable to either for injuries
caused by the negligence of the other, in the course of
such employment.  Camp v. Hall, 39 Fla. —, 22 South.
Rep. 792, and cases therein cited.

In 1887 our Legislature passed Chapter 3744, ap-
proved June 7, 1887, entitled, "An act to apportion the
damages in actions against railway companies by per-
sons and employes, and to provide for such recovery of
damages against said railway companies by its em-
ployes."   This act contained only two sections, and is
quoted in full in Duval, Receiver v. Hunt, 34 Fla. at
text page 104, 15 South. Rep. 879.  In 1891 the Legis-
lature passed Chapter 4071, approved May 4, 1981, en-
titled, "An act defining the liabilities of railroad com-

panies in certain cases." The first, second and third
sections of this act are quoted in the court's charge to
the jury in this case; the fourth section in express terms
repeals Chapter 3744 act of 1887, and the fifth section
puts the act into effect from its passage. It was held
by this court in Duval v. Hunt, *supra*, that the act of
1887 was adopted from the statutes of our sister State,
Georgia, and that any known and settled construction
placed thereon by the courts of that State, prior to its
enactment in this State not inharmonious with the pol-
icy and spirit of our own general legislation on the sub-
ject, would prevail in construing the statute in this
State. It was further ruled in that case, in conformity
to decisions from the Supreme Court of Georgia con-
struing their statute, that the apportionment of damages
authorized by the first section of our act of 1887, in
cases where both parties were at fault, had no applica-
tion to the cases provided for by the second section, and
that in cases embraced within said second section, the
employe injured by the negligence of another employe,
in order to recover against the employer must, himself,
be entirely free from fault. The second and third sec-
tions of the act of 1891 are substantially but re-enact-
ments of the act of 1887, so far as they apply to the
facts of this case, although there are some changes in
the phraseology. But the act of 1891, by section one,
enacts a provision entirely new to the statutory laws of
this State, but which we find is in the State of Georgia
a part of the same statute from which section two of our
original act of 1887 was, in Duval, Receiver, v. Hunt,
*supra*, declared to have been taken. This provision
stands as section 3033 of the Georgia Code of 1882, in
language identical with the first section of our act of
1891. The Supreme Court of Georgia in Campbell v.
Atlanta & Richmond Air Line R. R. Co., 53 Ga. 488,

held that under the provisions of section 3033 of the Code (corresponding to the first section of our act of 1891), an employe embraced within the provisions of their Code, section 3036 (corresponding with the second section of our act of 1887, and third section of our act of 1891), in order to recover damages must show that his injury was caused without fault or negligence on his part, but that the company must prove that its agents have used proper care and diligence. In the case of Thompson v. Central Railroad & Banking Company, 54 Ga. 509, the previous decision seems to have been overlooked until after the latter case was disposed of, and it was there held that the statute placed the burden upon the company to defeat plaintiff's right of recovery, either by showing that plaintiff was negligent, or that its agents were not negligent. In subsequent decisions the two cases above referred to were reconciled, and it was declared that in suits by an employe to recover damages from his employer for injuries alleged to have been inflicted by the negligence of another employe in performing some act in the master's service, in the performance of which plaintiff as a co-employe was participating, the plaintiff must show either that he was free from fault himself, or that there was negligence on the part of his co-employe; that upon proof of the fact that plaintiff in such a case was free from fault, the statutory presumption arose that the servants of the company were at fault, and it thereupon devolved upon the company to "make it appear" to the contrary. If, however, the act by which the employe was injured was one being performed by other employes in the master's business, but in the performance of which plaintiff was not participating, then the presumption of negligence on the part of the agents of the company, and that plaintiff was free from fault, arose under the statute, to

the same extent as if the plaintiff was not an employe, and it devolved upon the company to relieve itself, either by showing that plaintiff was at fault, or that its servants were not negligent. Atlanta & Richmond Air Line Ry. Co. v. Campbell, 56 Ga. 586; Central Railroad & Banking Co. v. Kelly, 58 Ga. 107; Central Railroad & Banking Co. v. Kenney, 58 Ga. 485. This construction of the statute was well settled in Georgia, long before the provisions of our act of 1891 were adopted in this State, and is still adhered to, as will be seen by reference to the following decisions: Central Railroad & Banking Co. v. Sears, 59 Ga. 436; Central Railroad & Banking Co. v. Roach, 64 Ga. 635; Central Railroad v. De-Bray, 71 Ga. 406; Savannah, Florida & Western Railway v. Barber, 71 Ga. 644; Georgia Railroad v. Ivey, 73 Ga. 499; East Tennessee, Virgina & Georgia Railroad v. Maloy, 77 Ga. 237, 2 S. E. Rep. 941; Georgia Railroad v. Bryans, 77 Ga. 429; Central Railroad & Banking Co. v. Small, 80 Ga. 519, 5 S. E. Rep. 794; Central Railroad & Banking Co. v. Nash, 81 Ga. 580, 7 S. E. Rep. 898; Western & Atlantic Railroad Co. v. Vandiver, 85 Ga. 470, 11 S. E. Rep. 781; Savannah & Western Railroad Co. v. Phillips, 90 Ga. 829, 17 S. E. Rep. 82. Following our ruling in the case of Duval, Receiver, v. Hunt, *supra*, we think this construction placed upon the statute by the Supreme Court of the State of Georgia is binding upon us in the present case. The plaintiff having been injured by the alleged negligence of a co-employe in performing an act about defendant's business in which plaintiff as an employe was participating, no presumption of liability arises against the defendant until it is shown either that plaintiff was not at fault or that his co-employe was. The second instruction on behalf of plaintiff was, as applied to these facts, correct, and there was no error in giving it.

The first and second instructions requested by defendant were properly refused, because they required plaintiff to prove that he was without fault and that defendant's agent was negligent, without giving him the benefit of the statutory presumption upon proof of one of these facts only.

The court said to the jury that the instructions given on behalf of the plaintiff and defendant did not cover the entire law of the case, and then proceeded to charge them in the language of the first three sections of the act of 1891. It was error to give without qualification or explanation the broad language of the first and second sections of that act, for the language of the first section was calculated to impress the jury with the idea that all presumptions were against the company, and that it devolved upon it to make it appear that its agents had exercised all ordinary and reasonable care and diligence, while as we have seen in a suit of this character by an employe no presumption against the company arises, nor is it required to "make it appear" that its agents have exercised proper diligence until and after plaintiff has shown either that he, himself, was without fault, or that his injuries were caused by the negligence of a co-employe. The language of the second section of the act of 1891 was calculated to impress the jury with the idea that they could apportion the damages between plaintiff and defendant in case they found that the plaintiff and the defendant's agents were both at fault; whereas, as we have seen, there can be no apportionment of damages in a case of this kind. In order for an employe to recover he must be free from fault. Duval, Receiver, v. Hunt, *supra.*

III. The third instruction requested by defendant was properly refused. It is sought to be sustained in this court upon the theory that the facts therein stated

would constitute contributory negligence. The language of this instruction is apparently approved in many decisions, most of which are collected in 1 Bailey's Personal Injuries, relating to master and servant, pages 392 *et seq.* As an abstract proposition we do not think this instruction can be sustained upon principle. The servant in the performance of his duties is bound to exercise ordinary care, or that degree of care which prudent persons usually exercise under similar circumstances, and |if he is injured by failure to exercise such care, his master is not liable. Wood's Master and Servant, §372. If, in the performance of his duties, two or more methods are open to him, and he has no instructions to pursue one in particular, he necessarily must choose between them, and he cannot be said to have been negligent if he in good faith adopts that which is more hazardous than another, provided the one pursued be one which reasonable and prudent persons would adopt under like circumstances. Any other rule would require the servant to be measured by the standard of very prudent persons, for only extremely cautious persons ordinarily adopt the least hazardous course where both are considered safe and appropriate. For this reason it can not be held as a matter of law that in all cases where a servant is injured while pursuing a method voluntarily adopted by him, more hazardous than other available methods, he is guilty of contributory negligence, for *non constat* the method pursued may be one which prudent persons would ordinarily exercise under like circumstances. Ordinarily the question of contributory negligence is one of fact for a jury under proper instructions from the court, and it is only in those cases where the conclusions and inferences to be drawn from facts in evidence are indisputable, involving a common instinct of mankind—self-preservation—that it becomes

a question of law. Louisville & Nashville R. R. Co. v. Yniestra, 21 Fla. 700. As applied to the facts of the present case this instruction told the jury that if the plaintiff voluntarily undertook to perform his duties of shifting cars by means of "running switches," instead of pursuing another method less dangerous, he could not recover for personal injuries received by him. Shifting cars by means of the "kicking back" process is not necessarily and at all times an act of negligence *per se*. As against persons other than employes, where the process is not guarded by proper precaution, such as ringing bells, stationing flagmen at crossings, brakesmen on the end of the train, and the like, it is, as a matter of law, negligence to shift cars in this manner; but there is no doubt that it may be performed with perfect safety to employes and third persons by exercising proper precautions. This instruction did not convey the idea that defendant would not be liable if this process was one which prudent persons under the circumstances surrounding the parties at the time would not usually have exercised, or that at this particular time and place it was imprudent to attempt it, or that plaintiff was not exercising due care commessurate with his surroundings in performing his duties connected therewith. It assumed as a matter of law not that making a running switch was in itself an act of negligence, but that it was negligence on this occasion only because there was a safer way to shift the cars. The plaintiff testified that this method was universally practiced upon all railroads, had always been used upon defendant's road at Cedar Keys, and that he had never known the safer method to be used by any railroad man. The defendant introduced no evidence to disprove these statements, except that of the engineer, Launt, who testified that this method was "known to railroad men to be very dangerous, but

it is generally done in that way. I have seen very careful men who would not kick the cars when they could help it, but very few of them; they generally kick the cars." There is nothing in the evidence from which the court could say that as a *matter of law* the plaintiff did not exercise due care in selecting the "flying swithch," or more dangerous method of shifting cars. That was a question for the jury to determine under proper instructions from the court. St. Louis & San Francisco Railway Co. v. French, 56 Han. 584, 44 Pac. Rep. 12.

IV. The court properly refused defendant's fourth instruction. This instruction was similar to the one considered in the preceding paragraph of this opinion except that it embraced the idea that the method of shifting cars adopted by plaintiff was one against which he had been warned by an official of the company. There was no evidence that any official of the company, in his official capacity, had ever given plaintiff such warning. The defendant's depot agent at Cedar Keys had often told plaintiff of the dangers involved in this process. He is not shown to have had any authority to prescribe the manner in which plaintiff's work was to be done, nor to forbid his doing it in any particular manner. All that he said was in the way of friendly advice to a personal acquaintance, and not as possessing authority from the company. There was no evidence that plaintiff was disobeying defendant's instructions at the time of his injury, and this charge was, therefore, properly refused.

V. There was no evidence upon which to base a charge for exemplary damages. There was nothing to show a malicious or intentional injury inflicted upon plaintiff, neither was there any evidence tending to show that the engineer was guilty of negligence of so gross and flagrant a character as to evince reckless disregard

of human life, or of the safety of those exposed to its dangerous effects, or that entire want of care which would raise the presumption of a conscious indifference to consequences, or to show wantonness and reckless- ness, or reckless indifference to the rights of others equivalent to an intentional violation of them, which is necessary to justify a jury in inflicting punitive damages. Florida Southern Railway Co. v. Hirst, 30 Fla. 1, 11 South. Rep. 506; Florida Railway & Navigation Co. v. Webster, 25 Fla. 394, 5 South. Rep. 714. The evidence showed at most that plaintiff gave a signal to stop the train; that the engineer did "slow down," but failed to come to a full stop. The signal was given from the car steps, instead of the swith platform, and the engineer testified (and was not contradicted) that he did not see the signal; that he was never on the lookout for a signal from the car steps, but only from the switch platform, and that it was understood between him and the plaintiff before they left the depot that he was not to stop the train, but only to "slow down." The engineer did stop the instant he ascertained that plaintiff was hurt. There was nothing in the facts to show negligence of a gross or flagrant character, nor to warrant the infliction of any damages by way of punishment. Florida Railway & Navigation Co. v. Webster, 25 Fla. 394, 5 South. Rep. 714.

The judgment is reversed, and a new trial awarded.