(36 South. 132.)

No. 14,898.

BRADY v. JAY.

(Feb. 29, 1904.)

RAILROADS—FIRES SET BY LOCOMOTIVES—APPEAL—REVIEW.

1. Where the owner of a logging railroad furnished to an independent contractor locomotives not equipped with spark arresters, and, in the usual operation of the road, one of the engines, in passing plaintiff's residence, threw sparks which fell upon and ignited the roof of her house, thereby causing its destruction, *held*, that the defendant owner is liable for the injury.

2. The district judge found that the fire was caused by sparks from the passing locomotive; that the defendant knew the danger attending the use of such locomotive, not equipped with a spark arrester, and burning pine fuel; and that the contractor took the engine as he found it, and used it as defendant had used it. *Held*, that the opinion of the trial judge on questions of fact is entitled to great weight, and, unless clearly wrong, will be affirmed. Hennen's Dig. vol. 1, p. 92, No. 1.

(Syllabus by the Court.)

Appeal from Twenty-Sixth Judicial District Court, Parish of St. Tammany; James M. Thompson, Judge.

Action by Ann C. Brady against William T. Jay. Judgment for plaintiff, and defendant appeals. Affirmed.

Benjamin Moore Miller and Fenner, Henderson & Fenner, for appellant. Frank Edward Rainold and Harvey E. Ellis, for appellee.

LAND, J. Plaintiff sued the defendant for damages in the sum of $7,800 for the destruction of her residence, with contents, by fire alleged to have been occasioned by sparks from a locomotive on a logging railroad owned by defendant.

The petition alleges that in 1895 plaintiff granted, without compensation, to defendant, permission to construct and operate said road over her lands, and that the track was laid within 100 feet of her house; that, after the lapse of several years, it became apparent that the operation of said railroad so near her residence was dangerous, on account of the emission of sparks of unusual size from defective locomotives; that plaintiff so notified defendant, and requested him in vain to move the track further from her premises; that in January, 1902, her house, with its contents, was destroyed by fire caused by sparks from one of defendant's locomotives, which was not provided with a spark arrester; and that her loss amounted to $7,800, and was caused by the negligence of defendant in using defective locomotives on a defectively constructed roadway.

Defendant filed an "exception" to the petition, in which it is alleged "that, at the time of the alleged burning of the property claimed to be owned by plaintiff, this defendant was not operating and was not in charge or control of the railroad mentioned in the petition, but that said railroad had been leased to one W. H. Baptist on the 15th day of January, 1901, as per written lease recorded in St. Tammany parish, in Mortgage Book I, 4, and that said Baptist was, at the time of said alleged burning of the property claimed by plaintiff, in charge of and operating such railroad."

This exception was referred to the merits. For answer, defendant denied each and every allegation of plaintiff's petition, and specially denied that the plaintiff was the owner of the property mentioned in the petition.

The cause was tried before the district judge, who rendered judgment in favor of plaintiff for the sum of $3,100.

The trial judge handed down a written

opinion, in which he discussed the facts of the case. He found that the fire was caused by sparks from one of the defendant's locomotives, which had no spark arrester, and that wood was used as fuel, thus increasing the danger of fire. He found the value of the property destroyed to be $3,100.

As to the alleged lease and the liability of defendant, the judge says: "The man Baptist was not the lessee of the road. He was a contractor for the purpose of doing certain work. The railroad used by him was in the same condition in which Jay maintained it.

"Jay knew from experience the dangerous condition of the wood-burning locomotives. Baptist took them as he found them, and used them as Jay used them. Jay did not supply Baptist with safe appliances. The doctrine in such cases is set forth in Hawver v. Whalen (Ohio) 29 N. E. 1049, 14 L. R. A. 828."

One cannot, by employing an independent contractor, relieve himself from liability for the doing of work from which injury will naturally result to another unless means are adopted to prevent it. He must see that such means are employed, although the contractor stipulates to take the risk and responsibility. See, also, A. & E. Ency. of Law, vol. 16, p. 205; Savannah, etc., R. Co. v. Phillips, 90 Ga. 829, 17 S. E. 82; Conlon v. Eastern R. Co., 135 Mass. 195.

"This principle may be regarded as founded in equity and common sense. I conclude that Jay is the responsible party."

Defendant appealed, and plaintiff has joined in the appeal, praying that the judgment be increased to the original amount demanded in the petition.

Defendant's counsel, in their brief, contend:

"(1) That he is not responsible · for any damage caused by fire, even if set by sparks from the engines, because the road was operated by Baptist under the contract offered in evidence, and the defendant had no control over the road or its management.

"(2) That the fire was not caused, and could not have been caused, by sparks from the engine.

"(3) That the evidence does not exclude the reasonable hypothesis that the fire was occasioned by another cause than sparks from the engine."

The second and third grounds of the defense may be considered together.

1. The trial judge, who knew the locus in quo and heard the witnesses, after reviewing the evidence, said: "In the instant case I have weighed the testimony carefully, and cannot arrive at any other conclusion than that the fire was caused by defendant's locomotive."

The track was within 150 feet of plaintiff's house, which was covered by an old shingle or board roof. The grade near the house was steep, thus making a forced draft necessary. The fuel used was pine wood. The locomotive was not equipped with a spark arrester.

The wind was blowing across the track in the direction of the house at the rate of 25 miles an hour. In a short time after the passage of the train, the roof of the house at the side nearest the track was seen in a blaze. There was no fire in the house for hours before. The kitchen in which one of the fires was started was not burned. The room in which the other was kindled was in the ell of the building. The occupant of this room testified that this fire burned out early in the morning, before he left the premises. The evidence shows that the fire started on the roof of the main building, which was unoccupied and closed, and thence made its way to the ell. The locomotives used on defendant's road caused many fires along its line. In most cases the fires were caused by sparks igniting grass on the right of way near the track, but sometimes the fire commenced some distance from the roadbed. On one occasion a tree 100 yards from the track was set on fire by sparks from the locomotive.

The above-recited facts are shown by the evidence, and sustain the conclusion of the trial judge. "The opinion of the judge a ′ quo upon questions of fact, he having had an opportunity of seeing the witnesses and hearing their testimony, is entitled to great weight, and his judgment, unless clearly wrong, will be affirmed." Hennen's Dig. vol. 1, p. 92, No. 1.

The facts recited show a clear case of negligence, and disregard for the safety of property along the line of defendant's railroad.

2. In January, 1900, defendant made with

William H. Baptist a contract for the cutting and delivery of all the merchantable pine timber on certain described tracts of land.

Defendant was to furnish the use of his railroad, two locomotives, cars, tools, etc. Baptist was to keep the same in repair, and bear all expenses of operation of the road, and of cutting and delivering the timber.

For compensation, Baptist was to receive the sum of $2.50 per thousand feet of timber delivered. The contract embraced a warranty clause binding Baptist to protect and defend Jay "from all liability for damage that may accrue or be caused to any one by any or every use of said property above named"; it being understood, however, that Baptist should act independently, and have full control of the work stipulated to be done, without supervision of any kind by defendant.

Under this contract the timber to be cut and all necessary tools and appliances and means of transportation were furnished by defendant. Baptist furnished superintendence and labor.

This contract was not a lease, but a hiring of labor or work by the job. Civ. Code, art. 2756.

The operation of the railroad was for the purpose of transporting logs belonging to the defendant. The locomotive which caused the fire never had a spark arrester. The defendant admits this fact, but states that the tubes were so small that a spark more than 1¼ inch in thickness could not escape. In answer to a question propounded by the presiding judge, he said that a spark passing through the tubes "might be a foot long."

If defendant had been operating the railroad when the house was burned, his failure to use a spark arrester would have constituted a clear case of negligence. The general rule is that the operator of a railroad should use on his engines the most approved mechanical inventions to prevent the escape of fire. 13 Am. & Eng. Ency. Law (2d Ed.) p. 472.

Conceding that defendant was not responsible for the negligence of the contractor, the question remains whether the former was absolved by the contract from liability for his own negligence in furnishing a dangerous appliance.

It has been held in several cases that a railroad company is liable for the negligence of a contractor operating trains for his own benefit. Hawver v. Whalen, 14 L. R. A. 835, notes, citing Rome & D. R. Co. v. Chasteen, 88 Ala. 591, 7 South. 94; Illinois Cent. R. Co. v. Finnigan, 21 Ill. 646; Chicago, etc., R. Co. v. Whipple, 22 Ill. 105.

But the general rule seems to be that, where the contract gives the contractor the right to control the train, the liability rests on him. Elliott on Railroads, vol. 3, § 1063, p. 1590.

The same writer says: "Where the contract provides that the company shall furnish appliances or material, the liability of the company for injuries resulting from defects in such appliances or material depends largely upon the circumstances of each case." Id. p. 1591.

In Conlon v. Eastern Ry. Co., 135 Mass. 195, it was held that when a person, not the servant of the master or contractor, was injured by the fall of a derrick furnished by the master under the contract, and which, when delivered, was obviously defective, the master was liable for the injury. In King v. New York C. & H. R. R. Co., 66 N. Y. 181, 23 Am. Rep. 37, defendant furnished a derrick suitable and safe at the time for use. In Savannah R. Co. v. Phillips, 90 Ga. 829, 17 S. E. 82, it was held: "A railroad company which furnished to an independent contractor an engine upon which a fireman already in the service of the company was by it ordered to work is liable to him for personal injuries caused by defects in the engine attributable to the company's negligence, though the train was entirely under the control of the contractor."

If, as in this case, the injury is attributable to the fault of the corporation or individual owning the railroad, in furnishing a dangerous appliance for the use of the contractor, the resulting liability cannot be shifted by contract to the prejudice of third persons. If the contractor was also negligent in operating the unsafe appliance, it cannot avail the owner, who was himself guilty of negligence.

It would be a dangerous doctrine to hold that the owner of a railroad can escape liability for defective engines by turning over the plant to a contractor under an agreement

that the latter shall operate trains, and be responsible for all damages to persons or property.

The district judge well said: "Jay knew from experience the dangerous condition of the wood-burning locomotives. Baptist took them as he found them, and used them as Jay had used them. Jay did not supply Baptist with safe appliances."

Defendant obtained from plaintiff, for little or no consideration, a right of way for his railroad very near her residence. He certainly owed the plaintiff the duty of using· reasonable precautions against the danger of fire.

He should not be permitted to escape the performance of that duty by operating unsafe appliances through a third person. The contractor should be considered as his agent in such operation.

The question is new in our jurisprudence, but we do not consider its solution difficult, on principles of justice and equity.

3. In fixing the value of the property destroyed, including paintings, books, old furniture, and other objects of uncertain value, the judge a quo adopted the lowest estimate shown by the evidence.

He had a personal knowledge of the building and contents, as shown by his testimony.

Value is largely a matter of opinion, and, where there is no market value, it is more or less a matter of conjecture.

We are not prepared, after a review of the evidence, to dissent from the conclusions of the judge a quo.

Judgment affirmed.