(36 South. 606.)

No. 14,845.

BAQUET v. NEW ORLEANS & C. R., LIGHT & POWER CO.

(May 9, 1904.)

PERSONAL INJURIES—ACTION FOR DAMAGES— TRIAL TO COURT—JUDGMENT—REVIEW— QUESTIONS OF FACT.

1. In an action for damages for personal injuries, involving only questions of fact, tried before the district judge without a jury, his judgment, unless clearly erroneous, will be affirmed.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by August Baquet against the New Orleans & Carrollton Railroad, Light & Power Company to recover for personal injuries. Judgment for defendant, and plaintiff appeals. Affirmed.

A. E. & O. S. Livaudais, for appellant. Dart & Kernan, for appellee.

LAND, J. This is a suit to recover $5,000 damages for personal injuries alleged to have been occasioned by the negligence of defendant company.

Plaintiff represented that on September 30, 1901, he was struck by one of defendant's cars; the result being a fracture of his collar bone and one rib, and other wounds.

The surrounding circumstances and the accident are thus set forth by the plaintiff in his petition:

"That his attention was attracted by the flash of the headlight and the sounding of the gong of an approaching car coming from the rear on the opposite track, and to the danger of one of his employés, who was about to cross said track directly in front of said moving car; that your petitioner, shouting 'Look out!' to his said employé, and extending his arm to warn his said employé of his danger, advanced one step in his direction, and at that time car 209, coming in the opposite direction, ran and struck your petitioner as above set forth.

"That, owing to the darkness and the want of proper headlight on said car 209, and the failure of the motorman on said car to sound his gong, it was impossible for your petitioner to see or be warned of his danger in time to avert said collision."

The detailed damages, as set forth in the petition, are as follows:

Physical suffering, $1,000; lost time, $630; doctor's bill and medicine, $100; loss by sale at a sacrifice of his stock in the dairy business, $600; forced retirement from business and active life, $670; loss from incapacity to perform manual labor, $2,000.

Defendant answered, pleading a general and special denial, and, in the alternative, contributory negligence.

The cause was tried before the district judge, who rendered judgment in favor of the defendant for reasons assigned in his written opinion. Plaintiff appealed.

The trial judge found from the evidence

that defendant stepped from right behind his wagon, loaded with hay, on the track in front of the approaching car, which was thoroughly illuminated on the inside, at least, and that the car was too close to avoid a collision, though every effort was made to do so.

Plaintiff was a dairyman. On the evening of September 30, 1901, he had sent two of his employés for a load of hay. Plaintiff, at dark, went to meet the wagon, and accompanied it to Carrollton avenue. There the wagon stopped, and the boy on the hay got down and started across the avenue for the purpose of delivering a gate key to one Smith. The other employé remained with the wagon, standing near the horse's head. Plaintiff's testimony is, in substance, that he saw a car coming up one of the tracks, and called to the boy to "look out," and then something came and hit him—he did not know what. The car which he saw was going in the direction of Canal street. He was standing with one foot on the track, facing Carrollton. He did not see the car which struck him, and would have seen it had there been a headlight. It was very dark, and the only light in the immediate vicinity was that from Smith's dairy or stable, across the street. He was standing in that light, waiting for the boy, who was crossing the street to the dairy. Did not hear the sounding of the gong. Stood there about a minute and a half before he was struck. Was struck in the front portion of his body, on collar bone and knee. The wagon was standing 15 or 20 feet before him in the street. It did not prevent him from seeing the car, etc.

It is to be noted that the petition alleged that plaintiff "advanced one step," when he was struck by the car.

The evidence shows conclusively that the car No. 209 was lighted by electricity in the usual manner, and the decided preponderance of the evidence is to the effect that the headlight was burning. The conductor and motorman so testify positively, and the circumstantial evidence is strongly in favor of that hypothesis; .the headlight and four of the interior lights being in the same circuit, and burning at the same time. The extinguishment of the four interior lights would have attracted attention.

The fact that the passengers in the car saw the wagon, horse, and driver before the collision tends to show that the headlight was burning.

The testimony of Heintz throws little or no light on the accident. He was standing at the horse's head, with his back in the direction from which car No. 209 was approaching. He saw the other car, but did not see plaintiff, nor hear him halloo, just before the accident. He did not see or hear car No. 209. To use his expression, he heard a knock in the back part of the wagon, and in a short time was told by the boy that the old man was knocked down. He saw no light in the stable or dairy. The wagon was standing within six or seven feet of the track.

Joe Rousset was the boy on the wagon. When the vehicle reached Carrollton avenue, it stopped in front of Smith's dairy. The boy got off the wagon for the purpose of delivering a key to Smith. It was necessary for him to cross the railroad tracks. He saw plaintiff coming along the avenue, and a car was coming from Tulane avenue. Plaintiff called to the boy, saying, "Look out for the car!" He ran across the tracks. The car went up to Smith's bridge or crossing and stopped. It was a dark night, and there were no lights in the dairy. He saw no other car. He went to the stable and handed the key to Smith, who told him that his mother had been struck by the car. The boy replied: "It can't be my mother. It must be Mr. Baquet." He ran out, and found that Baquet had been struck.

When plaintiff called to Rousset, the for-

mer was standing at the corner of the bridge leading to Smith's stable, on a plank about 10 inches wide, next to the rail of the track. After the accident, Rousset saw plaintiff "lying out by the wagon," about 20 feet from the track. This witness testified that he looked, but he did not see car No. 209 until after plaintiff was struck; that then "the lights were all burning in the top of the car," and a car so lit could be seen a block or more.

Smith's attention was attracted by the noise of the collision. He did not see the wagon. When he saw car 209, it was lighted up.

Dinkel, a passenger on the car, saw the wagon, horse, and Heintz, but no other person, prior to the collision.

Ferriot, another passenger, testified that he saw the wagon of hay very near the track, and that the man who was struck was behind the wagon.

Witness first saw the man at the moment of collision, and evidently means that the man was just beyond the wagon. This same witness testified that the car was illuminated, and that the motorman did not sound any special alarm, but sounded his gong as is "usual with them."

The conductor testified to the ringing of the gong, and that when the front of the car reached the wagon a man stepped from behind the load of hay, and was struck by the side of the car.

The motorman's testimony is substantially that the man stepped from behind the wagon loaded with hay when the car was just in front of, and a few feet from, the wagon; that the witness sounded his gong as he approached the vehicle, and, as soon as he discovered the man, applied the brakes and reversed the current; that the car was stopped within about 45 feet from the place where the collision took place; that at the time the headlight was burning, and the car illuminated in the usual manner; the man was

112 La.—20

never in front of the car, but approached from the side, and was struck by the grab handle, etc. The motorman also testified that the only car he passed was at the Illinois Central crossing, about 300 feet from the scene of the accident. We assume that this was the car referred to by plaintiff in his testimony, and that he did not see car 209 at that time, because it was not visible. No one but Heintz testified that the two cars passed each other about the place of the accident.

None of the plaintiff's witnesses saw the accident, and therefore cannot corroborate his statements as to how it occurred. According to his version, he was standing with one foot on the track; the night was dark, and he did not see the approach of the car, because it had no headlight, and did not hear it, because the gong was not sounded.

The preponderance of the evidence is in favor of the proposition that the headlight was burning, and it is certain that the interior of the car was brilliantly illuminated. An electric car running in the dark is a brilliant object, which cannot escape the most casual vision.

If plaintiff was standing partly on the track, it behooved him to use extra care to observe the approach of the cars, and his failure to do so would constitute negligence. Hence the necessity of alleging and proving that the cars were not properly lighted. His own witnesses negative his testimony that there was a light from the stable or dairy which illuminated the place where he was standing; and his statement that he was standing partly on the track, 15 or 20 feet in front of the wagon, is contradicted by the testimony of three witnesses, who locate him behind the wagon. Heintz also testified that the noise accompanying the collision was back of the wagon.

It is more probable that plaintiff came suddenly from behind the wagon load of hay

which obscured his vision, than that he was standing on the track and failed to see a brilliantly lighted car approaching over an unobstructed roadway.

The district judge gave credit to the testimony of defendant's witnesses, and we are not prepared to say that his findings of fact were erroneous.

Judgment affirmed.