PROVOSTY, J.
Plaintiff sues the defendant electric street railway company in damages for injury sustained by him from falling upon the asphalt pavement while attempting to board one of its cars.
. Plaintiff was at the time between 75 and 76 years old, but in good health and active for a man of that age. The conductor and plaintiff, who alone testified to the manner of the fall, differ in their statements. Plaintiff says that he was in the act of boarding the car, and was already on the step with both feet, and had a hold of the grab handle, when the car started with a sudden jerk, causing him to lose his hold and fall; that he fell on his right side, crosswise the street. 'The conductor says that plaintiff—
“put his foot on the curbing so as to get hold of the handles, and he overbalanced himself, and made three or four steps, and sat down on the asphalt pavement. He did not have his foot on the step of the car. He did not have hold of the car at all. In attempting to get hold of the car he overbalanced himself and sat ■down.”
The curbing here referred to is that of the neutral ground upon which the car runs. The distance between it and the track is 2 feet 8 inches, and its elevation above the asphalt surface is some 3 or 4 inches.
The whole case depends upon which of the foregoing two statements is to be believed. The motorman corroborates the conductor in the statement that the car had not moved. He says that he was standing with one hand on the brake and the other on the controller when he got three bells, the meaning of which is “not to move at all from where you are,” and that, understanding from this that there was trouble, he wheeled around to see what the trouble was, and, looking through the door of the car, saw the plaintiff “out about five or six feet from the curbing on his knee reaching out to pick up his cap.”
The conductor says that when he saw plaintiff fall he gave three bells and got down to assist plaintiff, and that plaintiff, “when he first fell, was straight back like this, sitting down,” and that plaintiff “turned around on both hands and picked himself up, picked up his cap, and got up by himself, and then walked in the car ahead of me.”
The inspector of the defendant company testifies that he called to see plaintiff the day after the accident, and that plaintiff-then told him that the car had started “before he' could ever get a foot on the step of the car.”
The son of plaintiff testified that about a week after the accident he had a conversation with the conductor about the accident, and that the conductor told him that:
“My father was in the act of getting on the car, and that he lost his balance and fell; that he stopped a short distance ahead, and waited for him to get up and come to the car.”
Motormen and conductors are required to report all accidents. In this ease no report was made; and the explanation given is that it was 'not considered that there had *450 been an accident, and it was not known that plaintiff had been hurt.
Without assistance plaintiff boarded the car, and got off at his destination, and walked to the sidewalk. Further than that, however, he found himself unable to go, and had to lean against the fence to keep from falling. He says it was as much as he could do to get out of the ear. An X-ray .examination showed that there was a fracture of “the neck of the thigh bone”; that is to say, the break was between the shaft proper of the thigh bone and the head, or enlargement, which fits into the socket of the !hip. The hurt is permanent, owing to the fact that the liquids of the joint will prevent the parts from knitting. The effect is a laxness of the limb, and always more or less suffering, and inability to walk without crutches, or a crutch and stick. Plaintiff’s having been able to walk after his fall is explained on the theory that:
“There may have been at that time some impaction of the bone, the two fragments locking together, which gave more rigidity to the bone.”
The case was tried, by a jury and resulted in a verdict for $4,000, which the judge, refused to set aside. The appeal is by defendant.
The case has been presented with great ability on both sides, and the argument on both sides is strong.
The learned counsel for the defendant company lay great stress on the fact that upon the crucial point in the case, that of whether plaintiff’s fall was occasioned or not by the movement of the car, plaintiff has only his own testimony, whereas the defendant has the testimony of two witnesses — the conductor and the motorman. But the sharp contradiction on this point is an element of great weakness in defendant’s case, as the case stands before this appellate court; for the jury could not possibly have found in favor of plaintiff without disbelieving the conductor and the motorman, and the trial judge could not possibly have refused to set aside the verdict without taking the same view, and hence this case becomes one in which peculiar weight must be attached to the view taken of the case below, where the witnesses were seen and heard while testifying. While the numerical preponderance of the witnesses is on defendant’s side, there is on plaintiff’s side the great improbability that a man leaning forward to grasp the handle bars of a car for boarding it would fall backwards if he lost his footing or lost control of his limbs. Then, again, the court knows of the bad habit of conductors to ring for the car to start before the passenger has quite got on. And, again, there is a good deal of improbability that the conductor would have rung at all if he had simply wanted the car to stand still; for the invariable rule is that the car must stand until signaled to go on.
The court is very far from saying that, if the verdict had been the other way, it would not have approved it. The case is eminently one in which much weight must be attached to the verdict. In connection with the reluctance of this court to disturb a verdict upon a question of the appreciation of facts and of the credibility of witnesses, see the cases of Oxendine v. Louisiana Ry. & Navigation Co., 119 La. 191, 43 South. 1003; Riddle, v. Kreinbiehl, 12 La. Ann. 297 ; Nash v. Railroad, 52 La. Ann. 1203, 27 South. 661; Howarth v. Porte, 110 La. 650, 34 South. 722; Brady v. Jay, 111 La. 1074, 36 South. 132; Baquet v. N. O., etc.,.R. R., 112 La. 605, 36 South. 606; LaGrone v. City of N. O., 114 La. 260, 38 South. 160; Martinez v. Fabacher, 118 La. 954, 34 South. 632.
And the court may say the same of the amount of the verdict. It would have been better if somewhat smaller; but the matter of amount -is not one of strict proof, and the court could not give any positive, definite *452 reason for a reduction. The plaintiff suffered greatly, and still continues to suffer, and has been incapacitated from all work. Theretofore he had been earning a livelihood for himself and family.
Judgment affirmed.